FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2020 FEB 20 PM 2: 10

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

## '20 - CV - 00451

Civil Action No. _____

(To be supplied by the court)

__Tiffany Grays_____, Plaintiff

v.

__Blackhawk Aquisition, LLC_____,

__Shane Born_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

## COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Tiffany Grays   PO Box 472322 Aurora, CO 80047

(Name and complete mailing address)

720-623-1883  Legalgrays@gmail.com

(Telephone number and e-mail address)

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   Blackhawk Aquisition, LLC   1900 W. Littleton Blvd  Littleton, CO 80120

(Name and complete mailing address)

(800) 322-9034

(Telephone number and e-mail address if known)

Defendant 2:   Shane Born  2900 AAA Court  Bettendorf, IA 52722

(Name and complete mailing address)

563-344-7605  |  shaneborn@promaxunlimited.com

(Telephone number and e-mail address if known)

Defendant 3:   _____

(Name and complete mailing address)

_____

(Telephone number and e-mail address if known)

Defendant 4:   _____

(Name and complete mailing address)

_____

(Telephone number and e-mail address if known)

2

## C.   JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☑   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

<u>28 U.S.C. § 1355(a), 28 U.S.C. §2201, 28 U.S.C. § 1367</u>

<u>15 U.S.C. § 1681 et seq, 15 U.S.C. § 1691 et seq, 15 U.S.C. § 1601</u> et seq.

☑   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of <u>Colorado</u>.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of <u>Delaware</u> (name of state or foreign nation).

Defendant 1 has its principal place of business in <u>Iowa</u> (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3

### D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   FRAUDULENT CONCEALMENT OF MATERIAL FACTS

Supporting facts:

24. Unless otherwise noted, each Count is against all Defendants. Plaintiffs re-alleges the preceding paragraphs set forth above and herein and incorporate them herein all counts by reference inter alia:

25. Defendants concealed material existing facts described in this Complaint from the Plaintiff , including, but not limited to, the facts that: (a) the credit check which was being performed, was in true form, a 'hard' credit check, not the described "[s]oft inquiry;" (b) the website which was being used to submit the applications, with knowledge and intent by Defendants, was in true form, a ' Fully-qualified' website, not the described "[P]re-qualified website," (b) the Defendants intended on submitting credit applications, r received online, under the pretenses of both (1) "[s]oft inquiry;" and (2) "[P]re-qualified website," to numerous third parties, and in by doing so, was unauthorized; (c) Defendants were receiving and keeping the profits yielded by the unlawful practice described in this Complaint; (d) Defendants are not following the promises in their client's Privacy Policy.

26. Plaintiff has established that in fact, she does possess a consumer report, and in fact the Defendants did access that consumer report with legal permissible purposes, on or about March 17, 2018. Defendants then unlawfully used the consumer report and provided authorization six times other lenders (¶20, supra), while verbiage implicitly stated, "[s]oft inquiry," and "[P]re-qualified website," thereby without statutory permission, as Plaintiff never granted permission in accordance with 15 U.S.C. § 1681b(a).

27. Plaintiff's actions afterwards shows true intentions, attempting to cover-up and lie about unlawful and unethical actions directly injuring the Plaintiff. Defendants even failed to notify their own legal counsel of the removal of "[s]oft inquiry" from the website, prior to stating for the third time, that Defendants had performed lawfully, and Plaintiff granted implicit permission. Further purporting Defendants knowledge, awareness, comprehension and legal use of the term "[s]oft inquiry," deceitfully removing post notification of claim, willfully. According to the third party website, references a Marketing company as indicated in the original disclaimer on the website, ",[d]ealer marketing services;" further purporting Defendants as a Consumer Reporting Agency.

28. These facts were material to the Plaintiff and were ought to have been disclosed as required by federal law, in equity and good conscience.

29. The Plaintiff, ignorant of Defendants' fraudulent concealment, relied solely and only on the statements provided by the Defendants' client. The Plaintiff reasonably relied on Defendants' representations, having no cause to speculate the truth and accuracy of the statements.

30. Defendants' misrepresentations were done so intently, only to induce the Plaintiff into disclosing her personal information, so Defendants could perform and profit from unauthorized hard credit inquiries

31. As a result of Defendants' actions, the Plaintiff was injured as described herein and damaged in the amount to be proven at trial.

CLAIM TWO:  <u>FRAUDULENT MISREPRESENTATIONS OF MATERIAL FACTS</u>

Supporting facts:

32. Defendants unlawfully used and accessed Plaintiff's consumer report and provided authorization six times other lenders (¶20, supra), while the verbiage on the website implicitly stated, "[s]oft inquiry," and "[P]re-qualified website," thereby using and accessing Plaintiff's consumer report via hard inquiry without statutory permission, as Plaintiff never granted permission. Defendants go through rigorous training and understand credit; knowing the impact credit can have on the life of a person, thereby, intentionally misrepresenting the financing experts intent and undoubted resulting stress that ensued. Any credit issue is stressful.

33. Defendants' violations have significantly harmed the Plaintiff  as the Defendants' website said they were performing a "[s]oft inquiry" on the "[P]re-qualified website," in reality, Defendants were conducting 'hard' inquiries, on a 'Fully-qualified Website," against the Plaintiffs' consumer credit, furthering damaging ' by releasing the consumer credit reports to multiple third-party lenders. Hard inquires reduce the credit score, where soft inquires do not.

34. Restatement of ¶ 27, supra.

35. Restatement of ¶¶ 28-31, supra.

Additional Pages Regarding Additional Claims, Statement of Claims Attached as D. Statement of Claims

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

## See additional pages attached E. Request for Relief

**F.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

02·20-2020
_____
(Date)

(Revised December 2017)

6

# D. STATEMENT OF CLAIMS

# INTRODUCTION

1.    **COMES NOW**, Tiffany Grays, ("Plaintiff" or "she" or "her") makes claims against

Defendants: Blackhawk Acquisition, LLC; d/b/a ProMax LLC.; d/b/a Dealer Marketing

Services collectively ("ProMax") and Shane Born (collectively, "Defendants"); in accordance

with the Fair Credit Reporting Act, 15 U.S.C. Sections 1681 et seq. ("FCRA"); the Duties of

Furnishers of Information to Consumer Reporting Agencies Rule, 16 C.F.R. C 660, section

623(e)(l) of the FCRA, 15 U.S.C. § 1681s-2(e)(1), recodified as Duties of Furnishers of

Information, 12 C.F.R. § 1022, subpart E; Obligations of Resellers; Obligations of Users under

FCRA; Equal Credit Opportunity Act of Title VII, 15 U.S.C. § 1691 et seq; the Federal Truth In

Lending Act; 15 U.S.C. § 1601 et seq.; Fed. R. Civ. P. 57; Violations of Electronic Signatures in

Commerce 15 U.S.C. § 7001 et seq; and multiple Colorado Statute Violations. Plaintiff brings

this action as a result of Defendants' *inter alia*, intentional failure to act when notified of errors

on Plaintiff's consumer credit report. But for ProMax's services and applications, Plaintiff would

never have received the harm inflicted. As a CRA, User, Furnisher, and Reseller of consumer

credit reports, ProMax holds multiple duties to correct said errs with ProMax services and

applications. ProMax's actions have caused multiple injuries to the Plaintiff; including *inter alia,*

consumer credit score damage, mental and emotional distress, physical injuries, and financial

losses. Thus, scienter exists. Pursuant to Fed. R. Civ. P. 9, Plaintiff submits this heightened

pleading.

# FACTS

5.       Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference, *inter alia*.

6.       Plaintiff is an individual, consumer, over the age of 18, who resides in Colorado and conducted all business transactions with Defendants in Colorado. Plaintiff is a consumer who engaged in a consumer credit transaction with a client of ProMax, in Colorado, on or about March 17, 2018. Despite ProMax's services being used to perpetrate the violations against Plaintiff's consumer credit report and the Plaintiff, ProMax has ignored requests to resolve.

7.       Defendant Blackhawk Acquisition, LLC.; d/b/a ProMaxAll; d/b/a ProMaxUnlimited; d/b/a ProMax; d/b/a Dealer Marketing Services Inc., collectively ("ProMax"), a Foreign Limited Liability Company, with a principal office located at 221 W. 6th Street, Suite 1030, Austin, TX 78701. Defendant ProMax is registered to conduct business in the State of Colorado and at all times must comply with State and Federal laws. As a self-admitted "reseller of all three major bureaus for the past 20 years." Defendant ProMax held sufficient knowledge and information which supports comprehension and definition of the term soft inquiry and pre-qualification. Without expressed consent to do so, Defendant ProMax willfully and recklessly permitted inquires against the Plaintiff's consumer credit report and upon notification has failed to act. ProMax heedlessly and recklessly posted and/or allowed fraudulent misrepresentations to be posted upon the website of third parties, which ProMax administers and controls. ProMax is not only considered consumer reporting agencies, but also considered users, furnishers, and resellers of consumer reports and information, as ProMax actually performed the unlawful hard credit inquiry on behalf of third parties, including used car dealerships. ProMax failed to act when notified of the unlawful inquiries upon the Plaintiff's consumer reports with multiple consumer reporting agencies, thus through inaction have become complicit in infliction of injuries upon the

2

Plaintiff. Services purchased by third parties and subsequently provided by ProMax includes,

procuring lending for applicants, maintaining, and administering websites for used car

dealerships. In accordance with C.R.S. § 4-5-117. Subrogation of issuer, applicant, and

nominated person; ProMax is equally liable as the nominated person, to this Plaintiff.

8.       Defendant Shane Born is the Chief Operating Officer of ProMax. Mr. Born has been

aware of Plaintiff's claims and has refused to direct his employees to take appropriate action

directed under state and federal statutes; to correct the unlawful inquires upon the Plaintiff's

consumer credit report. As the Chief Operating Officer, Mr. Born is ultimately responsible for

ensuing compliance at ProMax and is being named in his professional and individual capacities.

9.       The Plaintiff set out 2018 with a goal of purchasing a home within the year. The Plaintiff

enrolled in an expensive credit repair program, to assist in accomplishing this goal. The Plaintiff

made a concerted effort to ensure any checks run against her credit were not going to damage it,

as the 2018 goal was to purchase the home.

10.      Defendants' conduct causing Plaintiff's credit score to drop, a loss of creditworthiness,

has prevented the Plaintiff from accomplishing her goals.

11.      In March of 2018 Plaintiff considered purchasing a used vehicle from the used car

dealership by completing a pre-qualification application on the used car dealership's website.

12.      The application stated it was performing a "soft inquiry" through the "pre-qualified"

application to determine Plaintiff's creditworthiness through approval of loan for vehicle for

personal use.

3

13.     Whereas consumer credit reports are concerned, a soft inquiry is consistent with the term pre-qualify, in that both do not harm or impact the consumer's credit score or worthiness; most frequently performed by consumers who are unsure of their intent to purchase.

14.     ProMax was responsible for the verbiage on the used car dealership's "pre-qualified" application including the representations that only a "soft inquiry" would be performed.

15.     The used car dealership's website contained a credit application which was stated it would "pre-approve/pre-qualification" the applicants' credit application for vehicle financing through a "soft inquiry." The known and intended actions by Defendants were to perform a "hard inquiry" through an application meant to fully qualify applicants; which is what occurred with the Plaintiff.

16.     It was reasonably expected that Plaintiff would believe the promises on the website.

17.     Plaintiff submitted her application through the used car dealership's website, which was controlled by Defendants, intending only to pre-qualify for vehicle financing through one soft inquiry.

18.     Soft inquiries as it relates to consumer credit reports means the inquiry is not shown to others who make inquiries against the consumer credit report and the inquiry will not adversely affect the credit score.

19.     Plaintiff declined to visit or purchase a vehicle from the used car dealer which was the extent of the consumer credit transaction authorized.

20.     Through receiving adverse action letters and her consumer credit reports, Plaintiff learned Defendants had performed/permitted **six hard inquires,** in lieu of the promised and agreed upon

4

**one soft inquiry**, with the following lenders: (1) Flagship Credit Acceptance LLC; (2) Consumer Portfolio Services, Inc.; (3) Ally Bank (twice); (4) ENT Credit Union and (5) Wells Fargo Dealer Services (WFDS).

21.     Upon notification of the unauthorized hard inquiries, Defendants' permitted and committed the destruction of evidence by changing content and language on the used car dealer's website and application, without maintaining a copy for evidence. Defendants have also failed to act, failed to correct or notify Consumer Reporting Agencies of the dispute.

22.     In March 2018, Experian was reporting the Plaintiffs' credit score only 2 points higher than in April 2018. In May 2018, the Plaintiffs' score takes a dramatic plunge as all the 'hard' inquiries catch up to reporting. Currently, the Plaintiffs' score has dropped more than 70 points due to all the unauthorized hard inquires. Nothing else in the consumer credit report has changed to explain the difference in score. This is because of these unauthorized 'hard' inquires.

23.     ProMax's conduct alleged herein are strikingly similar to ProMax's conduct alleged within an unrelated case with the Plaintiff substantiates the likelihood of future harm; as ProMax is becoming utilized by many auto dealerships within Colorado and throughout America.

## CAUSES OF ACTION

24.     Unless otherwise noted, each Count is against all Defendants. Plaintiffs re-alleges the preceding paragraphs set forth above and herein and incorporate them herein all counts by reference *inter alia*:

## COUNT THREE:

## Violations of 15 § U.S.C. 1681b,n,o,r,s
## FAIR CREDIT REPORTING ACT

### i.  Users of Consumer Reports Violations

36.  Defendants would be considered users of consumer reports according to 15 U.S.C. §
1681m.  Defendants have violated:

a.  15 U.S.C. § 1681b(a)(2), 1) by failing upon initial inquiry and subsequent request, to
provide the Plaintiff a copy of the Plaintiffs' credit application/written statement, proving
the Defendants authorization to perform the inquiries against the Plaintiffs' credit report.
The Plaintiff requested copies of all documentation and has been denied on multiple
occurrences. 2) The written instructions did not include authorization for the Defendants
to run hard inquiries against their consumer reports as described.

b.  By and through the acts and practices described herein, Defendants have violated section
609(a)(I) of the FCRA.

c.  15 U.S.C. § 1681r by Defendants providing the Plaintiffs' consumer information to third-
party lenders, it did so when it did not possess the authorization, under the terms of
"[s]oft inquiry," and "Pre-qualified website;" according to the website housing the
electronic application.

d.  As resellers, ProMax violates section 607(e), through filing to establish reasonable
procedures to ensure reports were re-sold under permissible purposes.

e.  By and through acts described in Counts One through Thirteen, Defendants have also
violated FCRA.

f.  Plaintiff has established that in fact, she does possess a consumer report, and in fact the
Defendants did access that consumer report without legal permissible purposes, on or

about March 17, 2018. Defendants then unlawfully used the consumer report, and provided authorization to six other lenders without statutory permission, as Plaintiff never granted permission in accordance with 15 U.S.C. § 1681b(a).

g. Defendants' misrepresentations were done so intently, only to induce the Plaintiff into permitting a hard inquiry against her consumer credit report. Defendants' actions resulting in the Plaintiffs' injuries as described herein and damaged in the amount to be proven at trial.

### ii. Consumer Reporting Agency

37. ProMax is a "consumer reporting agency" as so defined in 15 U.S.C. § 1681a(f).

38. ProMax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as so defined in 15 U.S.C. § 1681a(p).

39. ProMax regularly assembles and/or evaluates and maintains consumer reports for the purpose of furnishing the consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (1) Public record information and (2) Credit account information from persons who furnish that information regularly and in the ordinary course of business.

40. ProMax was void of authorization to access the Plaintiff's consumer credit report, ProMax was therefore unauthorized to do so, in violation of § 1681b(f)(1)(2).

41. ProMax's webpage fails to satisfy requirements under § 1681c-1(i)(6).

42. ProMax failed to have reasonable procedures to avoid violations in accordance with § 1681e(a).

43.     ProMax is void of any method for the Plaintiff to request her information, in violation of § 1681g.

44.     As ProMax is void of disclosure requirements under § 1681g, ProMax has also violated § 1681h.

45.     Had ProMax performed an investigation, ProMax would have determined the information was inaccurate, incomplete and/or unverifiable, ProMax was to promptly delete the information, yet has failed to act, in violation of § 1681i(a)(6).

46.     Upon notification of dispute, ProMax has failed to perform a reinvestigation or provide notice of dispute to Furnishers and credit reporting agencies.

47.     ProMax regularly engaged in activity, at the time the Plaintiff filled out the online credit application, which would define ProMax as a Consumer Reporting Agency. The Defendants failed to meet the obligations of Consumer Reporting Agencies: ProMax is required to establish a streamlined process, per 15 U.S.C. § 1681j(a)(l)(C)(i) for consumers to request consumer reports, ProMax does not currently possess such process. 15 U.S.C. § 1681s-2(e)(1) requires the Defendants to establish and maintain guidelines for furnishers regarding the accuracy and integrity of information.

48.     ProMax also meets the definition requirements of a 'nationwide specialty consumer reporting agency;' defined in, 15 U.S.C. § 1681a(x), as "[a] consumer reporting agency that compiles and maintains files on consumers on a nationwide basis relating to: (1) medical records or payments; (2) residential or tenant history; (3) check writing history; (4) employment history; or (5) insurance claims." ProMax compiles and maintains files, a feature of the ProMax CRM, relating to, *inter alia*, (1) residential or tenant history; (2) check writing history; (3) employment history; (4) insurance claims history; and/or (5) consumer credit reports, of any individual who

8

applied online, who reside in most, if not all, within the fifty states of the United States and the District of Columbia. The FCRA imposes several obligations upon nationwide specialty CRAs, including an obligation to provide to each consumer a free annual disclosure of information in the consumer's file ("annual file disclosure"). ProMax's failure to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statute.

49.     Under the FCRA, as a reseller, ProMax should be listed on the adverse action letter as the CRA., however ProMax was not listed as the CRA on Plaintiff's adverse action letter in violation of § 1681m(a)(2)-(3).

As a pass-through CRA, the actual originating CRA must be listed. ProMax is a vendor who merges and purges the data, thereby a reseller and then becomes a CRA.

### iii. Furnisher of Information to CRA's

50.     Furnishers of information to CRAs,' have additional requirements as stated in 15 U.S.C. § 1681s-2(a)(2)(A), because the Defendants "[r]egularly and in the ordinary course of business furnishes information to one or more CRA's about its "transactions or experiences" with consumers." ProMax regularly reports information to other third party CRA's, which are defined as CRA's in 15 U.S.C. § 1681a(f). ProMax regularly reports information to other third party CRA's, in violation of 15 U.S.C. § 1681b(f)(1), as ProMax held not any legal authority under Section 604, violating Section 604(a)(3)(A) and Section 604(a)(3)(F)(ii).

51.     ProMax failed the Plaintiff through inaction, including failure to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the

information relating to consumers which ProMax furnishes to other third party CRA's. Ignoring the guidelines established in appendix E of 12 C.P.R.§ 1022.42.

52.     The terms and conditions ProMax provided to the Plaintiff on the used car dealership's website that ProMax controlled, did not include authorization for the Defendants to run 'hard' inquiries against her consumer report, therefore ProMax violates 15 U.S.C. § 1681b(a)(2), as soon as they run 'hard' inquiries and not the stated "[s]oft inquiries."

53.     15 U.S.C. § 1681b(a)(3)(F), ProMax requested the Plaintiffs' consumer report without permission, thus the request was absent legitimate business reason.

54.     ProMax's failure to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statutes 15 U.S.C. § 1681s-2(a)(2)(A) and 15 U.S.C. § 7001.

55.     ProMax violates Section 623(a)(2) by failing to correct the incorrect inquires on the Plaintiffs' consumer report, upon identification of the issue.

56.     ProMax' has therefore obtained the Plaintiff's consumer information under false pretenses and should be fined and imprisoned under title 18, pursuant to 15 U.S.C. § 1681q.

57.     Pursuant to 12 CFR § 1022.43(e), as ProMax failed to provide the Plaintiff any notice of her claims against them as being considered a frivolous dispute, ProMax was to notify CRA's and have the inquires removed.

58. Upon notification of dispute, ProMax has failed to perform a reinvestigation or provide notice of dispute to Furnishers and credit reporting agencies.

59.     Defendants failure to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statutes 15 U.S.C. § 1681s-2(a)(2)(A) and 15 U.S.C. § 7001.

60.     Defendants failed to disclose at consummation of the transaction the required disclosures

pursuant to 15 U.S. Code § 1681g.

61.     By and through the acts and practices described in all paragraphs, ProMax has violated

section 609(a)(I) of the FCRA, 15 U.S.C. § 168Ig(a)(I).

### iv. Reseller of Consumer Credit Reports Violations - ProMax

62.     ProMax is a "reseller" in accordance with 15 U.S.C. § 1681a(u)(1)(2).

63.     ProMax assembled and merged the Plaintiff's information contained in the database of

multiple other consumer reporting agencies.

64.     ProMax assembled this data for the purpose of furnishing that information to third party

lenders and dealers.

65.     ProMax does not maintain a database of assembled or merged information.

66.     ProMax did not possess the written instruction of the Plaintiff in violation of §

1681b(a)(2).

67.     ProMax does not disclose to consumer reporting agencies the identity of the end-user of

the report nor the permissible purpose as it did not exist, in violation of § 1681e(e)(1).

68.     ProMax failed to make certifications and reasonable verification efforts in accordance

with § 1681e(e)(2)(A)(B).

69.     Once notified of Plaintiff's claims, ProMax failed to perform a reinvestigation in

violation of § 1681i(f)

70.     Plaintiff's consumer credit report held a fraud alert, which ProMax failed to verify the

identity of the Plaintiff, or contact the Plaintiff; in violation of section 605A(h),(f)

71.     As resellers, ProMax violates section 607(e), through filing to establish reasonable

procedures to ensure reports were re-sold under permissible purposes.

72.     As a reseller, ProMax should be listed on the adverse action notice as the CRA. Furthermore, as a pass-through CRA, the actual originating CRA must be listed. ProMax is a vendor who merges and purges the data, thereby a reseller and then becomes a CRA.


## COUNT FOUR: SUPPORTING FACTS:
## Violations of *15* U.S.C. § 1604(b); 12 CFR §§ 226.17(a)(1),(b); 226.17(c)(1)-(2)
## TRUTH IN LENDING ACT

73.     The Federal Truth in Lending Act, 15 U.S.C. §§ 1601-1667f, as amended, also known as, Title I of the Consumer Credit Protection Act; "[t]he Act requires creditors who deal with consumers to make certain written disclosures concerning finance charges and related aspects of credit transactions (including disclosing an annual percentage rate) and comply with other mandates, and requires advertisements to include certain disclosures."

74.     By stating terms "[s]oft inquiry," and "[P]re-qualified website," ProMax intentionally lured unsuspecting consumers, just as the Plaintiff, used her information to conduct 'hard' inquiries, willfully, wantonly, recklessly, negligently, greedily, and unapologetically. ProMax failed to have the model disclosures required by statute.

75.     As administrators for the used car dealer's website, ProMax is responsible for the false advertisements within the terms and conditions and on the actual application itself.

76.     ProMax has used and/or allowed the use of advertisements which contain statements regarding credit transactions through ProMax, which are known or speculated to be false and/or misleading.

77.     Advertisements posted online by ProMax on the used car dealer's website, did not contain appropriate disclosures.

**COUNT FIVE:**
**VIOLATIONS OF ELECTRONIC SIGNATURES IN GLOBAL AND**
**NATIONAL COMMERCE**

v. **Violations of 15 § U.S.C. 7001(c)**

78.   15 U.S.C. § 7001 puts requirements on all commerce using and storing electronic records. In particular 7001 provides:

((A)the consumer has affirmatively consented to such use and has not withdrawn such consent; "the consumer prior to consenting, is provided with a clear and conspicuous statement informing the consumer of:

(I)      any right or option of the consumer to have the record provided or made available on paper or in nonelectronic form, and

(II)     the right of the consumer to withdraw the consent to have the record provided or made available in an electronic form and of any conditions, consequences (which may include termination of the parties' relationship), or fees in the event of such withdrawal; informing the consumer of whether the consent applies (I) only to the particular transaction which gave rise to the obligation to provide the record, or (II) to identified categories of records that may be provided or made available during the course of the parties' relationship; describing the procedures the consumer must use to withdraw consent as provided in clause (i) and to update information needed to contact the consumer electronically; and informing the consumer (I) how, after the consent, the consumer may, upon request, obtain a paper copy of an electronic record, and (II) whether any fee will be charged for such copy;

79.     According to the Consumer Finance Protection Bureau Truth in Lending regulation, "The Electronic Signatures in Global and National Commerce Act (the E-Sign Act), 15 U.S.C. 7001 et

seq., was enacted in 2000 and did not require implementing regulations. On November 9, 2007, amendments to Regulation Z and the official commentary were issued to simplify the regulation and provide guidance on the electronic delivery of disclosures consistent with the E-Sign Act." https://files.consumerfinance.gov/f/201306_cfpb_laws-and-regulations_tila-combined-june-2013.pdf (page 1).

80.    Plaintiff's electronic pre-qualification credit application was submitted ProMax electronically, whom then sent the application unauthorized to six lenders, electronically from or within ProMax's software; therefore, ProMax is required to adhere to the provisions within Electronic Signatures.

81.    Defendants conduct national commerce.

82.    Defendant's website and credit application did not ask for the Plaintiff's consent, therefore, the Plaintiff did not consent to electronic records as required in § 7001(c)(1).

83.    At no point was Plaintiff provided statements nor were any displayed in conspicuous manners.

84.    Defendants' website failed to provide the Plaintiff a method to request copies of her application or all documents within her file at ProMax in violation of § 7001(d)(1).

85.    ProMax has failed to preserve all written or recorded information in connection with the Plaintiff's application in violation of 12 CFR 1002.12. ProMax does not have the original signed consent form as Plaintiff never provided authorization, in violation of § 7001(e).

86.    By and through acts described, and by failing to (1) Display an notices regarding electronic records to consumers and the Plaintiff; (2) display a method of consent and withdrawal; (3) display transaction limitations; (4) display procedure to withdrawal; (5) display

procedure to obtain a paper copy; (6) display hardware and software requirements; (7) grant consumer access to the information, thus ProMax violated all applicable sections of this statute.

87.    As a result of ProMax's conduct, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

## COUNT SIX:
## FOR FRAUDULENT MISREPRESENTATIONS IN ADVERTISING
## vi. Violations of C.R.S. § 5-3-110

88.    As the administrators for the used car dealer's website, ProMax is responsible for false advertisements it allows.

89.    ProMax has allowed and added advertisements on the used car dealer's website, which contain statements regarding credit transactions with used car dealer, which are in fact credit transactions with ProMax.

90.    Defendants knew the soft inquiry and pre-qualification advisements were false and/or misleading.

91.    Advertisements posted online by ProMax for the used car dealer's website do not contain appropriate disclosures.

92.    Misrepresentations were material to the Plaintiff.

93.    Plaintiff's reliance was justified.

94.    Plaintiff's reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences to Defendants' representations, actions, and/or inactions.

## COUNT SEVEN:
## BREACH OF CONTRACT

95.     The online "pre-qualification" application submitted by Plaintiff created a contract

between ProMax and Plaintiff.

96.     As only "[s]oft inquiry[ies]," were authorized according to the Terms and Conditions, on

the online "pre-qualification" credit application, the written contract between ProMax and the

Plaintiff, was void of Plaintiff's authorization for the six inquires performed.

97.      Plaintiff has performed all or substantially all, of the obligations imposed under the

Terms and Conditions.

98.     ProMax breached its pre-qualification application Agreement with the Plaintiff.

99.     ProMax's performance of six hard inquiries were neither set by nor assessed in

accordance with the reasonable expectation of the parties; constituting breach.

100.    Plaintiff's reliance upon said representations has caused Plaintiff's actual damages

including but not limited to, loss of employment, housing, creditworthiness.

101.    Plaintiff is entitled to damages proven through trial.

102.    Plaintiff is entitled to her reasonable fees and costs.

## COUNT EIGHT:
## OUTRAGEOUS CONDUCT

103.    By and through actions and inaction stated in all previous paragraphs and Counts,

Defendants' conduct is outrageous and performed with recklessly or knowingly to cause harm to

Plaintiff.

104.    As a result of Defendants' outrageous conduct, Plaintiff has incurred actual damages

including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has

experienced inter alia emotional distress, physical injuries, mental anguish including humiliation

and fear.

105.    Plaintiff is entitled to damages proven through trial.

## COUNT NINE:
## Violations of Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, et seq. ("UCCC"):

106.    By agreeing to perform a soft inquiry to pre-qualify the Plaintiff for a used car,

Defendants and Plaintiff participated in a "Consumer Credit Sale" as defined in C.R.S. § 5-1-

301(11)(a); thereby a "Consumer credit transaction" C.R.S. § 5-1-301(12).

107.    The written agreement did not permit ProMax to allow its customer to submit Plaintiff's

information to six lenders nor perform the six hard inquires.

108.    The pre-qualification application Agreement provided to Plaintiff was deficient,

ineffective, deceptive, conducted in bad-faith, unfair, unconscionable, and misleading in that it

does not state ProMax had authorization to perform any hard inquiries against the Plaintiff's

consumer credit report.

109.    By and through conduct of ProMax described in all paragraphs, ProMax's conduct can be construed as unconscionable, in violation of C.R.S. § 5-5-109 and C.R.S. § 5-3-210.

110.    ProMax further violates the UCCC in by reporting incorrect information for years, and upon notification and multiple opportunities to resolve; failing to do so.

111.    The reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

112.    Plaintiff is entitled to damages proven through trial.

113.    Plaintiff is entitled to her reasonable fees and costs.

## COUNT TEN:
## Violations of the Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-301, et seq. ("UCC")

114.    Colorado recognizes an obligation to conducting all commerce in good-faith, "Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement. *C.R.S. § 4-1-304.*

115.    ProMax breached their duty to act in good-faith with the Plaintiff by:

   (a) failing to ensure advertisements regarding credit transactions with ProMax were accurate;

   (b) ProMax had a duty to perform one soft inquiry against the Plaintiff's consumer credit report and ProMax performed six hard inquiries against the Plaintiff's consumer credit report.

(c) ProMax had a duty to perform corrections and investigations as stipulated in statute and failed to do so.

(d) ProMax destroyed evidence upon notification of Plaintiff's claims, depriving Plaintiff of the right to inspect and test the website; failing to preserve evidence of goods in dispute in accordance with C.R.S. § 4-2-515.

116.   As a result of ProMax's actions and inactions described herein, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

## **COUNT ELEVEN:**

## **Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ("CCPA")**

117.   Defendants conduct alleged in this Complaint and relating to its refusal or failure to correct errors on the Plaintiff's consumer credit report violates the Colorado Consumer Protection Act because they (1) constitutes unfair and/or deceptive acts or practices; (2) are committed in the course of Defendants' business; (3) have a pervasive public interest impact and have the potential to harm a substantial portion of the public; and (4) have caused injuries to the Plaintiff.

118.   CRA's violate the CCPA in by failing to correct the overtly obvious errors multiple times.

119.   Defendants' violations of the CCPA were committed in bad faith, evident in their failure to correct multiple times.

120.    ProMax exhibits further deceptive behavior by destroying evidence upon notification of Plaintiff's claims.

121.    ProMax's unauthorized hard inquiries and subsequent reporting to credit bureaus is not only unfair and deceptive, but also a violation of the CCPA.

122.    Plaintiff's injuries were unavoidable as Defendants' hold all the power and unilaterally control the information reported, the request to correct, and the ability to correct themselves. Plaintiff has suffered damages as a direct result of Defendant's violations of the CCPA.

123.    Defendants are liable to Plaintiff in amount to be determined at trial, including statutory treble damages. Plaintiff respectfully requests this Court award them the following damages pursuant to Colo. Rev. Stat. § 6-1-113(2)(a).  The greater of:

    (a)    the amount of actual damages sustained; or

    (b)    five hundred dollars; or

    (c)    three times the amount of actual damages sustained.

124.    Plaintiff respectfully requests that this Court award her fees and costs associated with this action pursuant to Colo. Rev. Stat. § 6-1-113(2)(b) and enjoin Defendants from continued unlawful conduct alleged.

## COUNT TWELVE:
## NEGLIGENT MISREPRENSATIONS IN TERMS AND CONDITIONS OF CREDIT CHECK

125.    As the administrators for the used car dealer's website, ProMax is responsible for false advertisements it allows.

20

126.    ProMax has allowed and added advertisements on the used car dealer's website, which

contain statements regarding credit transactions with used car dealer, which are in fact credit

transactions with ProMax.

127.    Defendants should have known the soft inquiry and pre-qualification advisements were

false and/or misleading.

128.    Advertisements posted online by ProMax for the used car dealer's website do not contain

appropriate disclosures.

129.    Misrepresentations were material to the Plaintiff.

130.    Plaintiff's reliance was justified.

131.    Plaintiff's reliance upon said representations has caused Plaintiff's actual damages

including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter*

*alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all

direct and foreseeable consequences to Defendants' representations, actions, and/or inactions.


## COUNT THIRTEEN:
## RESPONDEAT SUPERIOR

132.    ProMax is responsible for the actions of its employees, agents, and/or subscribers.

133.    Shane Born is responsible for the actions of ProMax employees and agents which use

ProMax services as Chief Operating Officer and having been directly informed by Plaintiff of the

damages sustained; including but not limited to used car dealerships.

134.    Defendants were negligent in their care and/or treatment of Plaintiff while acting within

the course of their employment and/or authority.

21

135.    As direct and proximate result of the negligent conduct of Defendants, Plaintiff has

suffered injuries and damages as fully described above.

## E. REQUESTS FOR RELIEF

136.    Plaintiff prays the court will grant relief as follows for, inter alia: credit damage; damage

to reputation; loss of affection; pain and suffering; mental and emotional distress; loss of time;

Past, present, and future medical bills; Hedonic damages; increased risk of harm; past and future

pain and suffering. past and future lost income, wages, and earnings. The Fair Credit Reporting

Act also provides civil liability for violations of the Act's provisions.15 U.S.C. §1681n(a)(2)(3);

allowing the Court to have full discretion on the discipline to which the Defendants' will be held.

Defendants have been willfully negligent in their duties and should be penalized according to 15

U.S.C. § 1681o(a)(1)(2). As a direct result of ProMax's unlawful actions aforementioned and

resulting Plaintiff's suffering, Plaintiff seeks, *inter alia:*

**WHEREFORE**, Plaintiff requests jury trial on all claims so triable and judgment as follows:

    **I.**        Award actual damages to the Plaintiff in accordance with 15 U.S.C. §

          1681n(a)(1)(B); 15 15 U.S.C. §§ 1640(a)(1) and 1640(a)(2)(i);

    **II.**       Award punitive damages to Plaintiff in accordance with 15 U.S.C. § 1681n(a)(2);

    **III.**     Award Plaintiffs' costs and attorney's fees in accordance with 15 U.S.C. §§

          1681n(a)(3) and 1681o(a)(2); C.R.S. § 5-5-206 and C.R.S. § 4-5-111(c)(d)(e)(f);

    **IV.**     All statutory damages awarded to the Plaintiff, calculated separately for each

          statutory violation. Plaintiff believes statutory damages be counted at the maximum,

          $1,000 per violation for Defendants' willfully negligent conduct, that each violation be

          tallied by the day, and per credit report affected. Plaintiff's credit report has been

adversely affected each and every day following March 17, 2018, up to and through the known hard inquiry maximum time period allowed on Plaintiff's credit report, of two calendar years, March 17, 2020; up to and through each and every day the Plaintiff has and will likely suffer in pain as a direct result of Defendants' conduct, the rest of her life, a minimum of forty years, 14,600 days. Thus, Plaintiff is entitled to $1,000 \times 4 \times 730 \times 14,600 = \$42,632,000,000.$

V.      Maximum pre and post judgement interest awarded on all allowable damages for the Plaintiff;

VI.     Special damages awarded to the Plaintiff;

VII.    In accordance with C.R.S.§ 5-6-113, protect consumers nationwide by Declaring ProMax's practices unconscionable, ordering injunctive relief; requiring ProMax's strict compliance of all Acts violated herein.

VIII.   In accordance with 15 U.S.C.§ 1640, statutory damages of 3 times the amount of any average loss to be determined by jury at trial, for the TILA violations;

IX.     Declare Defendants to have breached the terms and conditions of the contracts and provide injunctive relief on behalf of Plaintiff who so desires:

    a.  Defendant will send a letter to each CRA;

        i. Experian; &

        ii.     Transunion; &

        iii.    Equifax; &

        iv.     SageStream; &

        v.      Innovis;

    b.  Within letter, request each hard inquiry that was authorized illegally be removed;

    c. A copy of each correspondence will be sent to the Plaintiff;

    d. Defendants will repeat efforts, until all fraudulent hard inquiries are removed from all consumer credit reports;

**X.**     Award actual damages to Plaintiff, due to multiple breaches of contract;

**XI.**     Award actual and consequential damages liberally pursuant to C.R.S. §§ 6-1-101 et. seq., 6-1-113, C.R.S. § 4-1-305 and C.R.S. § 4-2-715;

**XII.**     Disgorgement of the ill-gotten gains received from the bad-faith, fraudulent behavior;

**XIII.**     All statutory damages according to proof;

**XIV.**     Punish Defendants under title 18 in accordance with, 15 U.S.C. § 1681q, with imprisonment and fines;

**XV.**     In accordance with C.R.S. § 5-5-109(6) provide damages in addition to all other remedies to the Plaintiff;

**XVI.**     Award treble damages in accordance with C.R.S § 6-1-113(2)(a)(III), (2.3);

**XVII.**     Other relief the Court finds appropriate awarded to the Plaintiff.

JS 44 (Rev. 06/17)   District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Tiffany Grays

**DEFENDANTS**
Blackhawk Aquisition, LLC
1900 W. Littleton Blvd
Littleton, CO 80120

(b) County of Residence of First Listed Plaintiff   **Denver**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Tiffany Grays, pro se
PO Box 472322
Aurora, CO 80047   720-623-1883

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
15 USC 1681 et seq, 15 USC 1691, 15 USC 1601 et seq

Brief description of cause   ☐   AP Docket

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE                          DOCKET NUMBER

DATE   02-20-2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE