# D.   STATEMENT OF CLAIMS

# INTRODUCTION

1.      **COMES NOW**, Tiffany Grays, ("Plaintiff" or "she" or "her") makes claims against

Defendants:  Blackhawk Acquisition, LLC; d/b/a ProMax LLC.; d/b/a Dealer Marketing

Services collectively ("ProMax") and Shane Born (collectively, "Defendants"); in accordance

with the Fair Credit Reporting Act, 15 U.S.C. Sections 1681 et seq. ("FCRA"); the Duties of

Furnishers of Information to Consumer Reporting Agencies Ru1e, 16 C.F.R. C 660, section 623

of the FCRA, 15 U.S.C. § 1681s-2, recodified as Duties of Furnishers of Information, 12 C.F.R.

§ 1022, subpart E; Obligations of Resellers under FCRA; and multiple Colorado Statute

Violations. Plaintiff brings this action as a result of Defendants' *inter alia*, intentional failure to

act when notified of errors on Plaintiff's consumer credit report. But for ProMax's services and

applications, Plaintiff would never have received the harm inflicted. As a CRA, Furnisher, and

Reseller of consumer credit reports, ProMax holds multiple duties to correct said errs caused by

ProMax services and applications. ProMax's actions have caused multiple injuries to the

Plaintiff; including *inter alia,* consumer credit score damage, mental and emotional distress,

physical injuries, and financial losses. Thus, scienter exists. Pursuant to Fed. R. Civ. P. 9,

Plaintiff submits this heightened amended pleading which relates back to the first complaints.

# FACTS

2.      Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein

by reference, *inter alia*.

3.      Plaintiff is an individual, consumer, over the age of 18, who resides in Colorado and conducted all business transactions with Defendants in Colorado. Plaintiff is a consumer who engaged in a consumer credit transaction with a client of ProMax, in Colorado, on or about March 17, 2018. Despite ProMax's services being used to perpetrate the violations against Plaintiff's consumer credit report and the Plaintiff, ProMax has ignored requests to resolve.

4.      Defendant Blackhawk Acquisition, LLC.; d/b/a ProMaxAll; d/b/a ProMaxUnlimited; d/b/a ProMax; d/b/a Dealer Marketing Services Inc., collectively ("ProMax"), a Foreign Limited Liability Company, with a principal office located at 221 W. 6th Street, Suite 1030, Austin, TX 78701. Defendant ProMax is registered to conduct business in the State of Colorado and at all times must comply with State and Federal laws. As a self-admitted "reseller of all three major bureaus for the past 20 years," Defendant ProMax held sufficient knowledge and information which supports comprehension and definition of the term soft inquiry and pre-qualification. Without expressed consent to do so, Defendant ProMax willfully and recklessly permitted hard inquires against the Plaintiff's consumer credit report and upon notification of said unlawful hard inquiries, has failed to act. ProMax heedlessly and recklessly posted and/or allowed fraudulent misrepresentations to be posted upon the website of third parties, which ProMax administers and controls. ProMax is not only considered consumer reporting agencies, but also considered furnishers and resellers of consumer reports and information, as ProMax actually performed the unlawful hard credit inquiry on behalf of third parties, including used car dealerships. ProMax failed to act when notified of the unlawful inquiries upon the Plaintiff's consumer reports with multiple consumer reporting agencies, thus through inaction have become complicit in infliction of injuries upon the Plaintiff. Services purchased by third parties and subsequently provided by ProMax includes, procuring lending for applicants, maintaining, and administering websites for

used car dealerships. In accordance with C.R.S. § 4-5-117. Subrogation of issuer, applicant, and nominated person; ProMax is equally liable as the nominated person, to this Plaintiff.

5.      Defendant Shane Born is the Chief Operating Officer of ProMax. Mr. Born has been aware of Plaintiff's claims and has refused to direct his employees to take appropriate action directed under state and federal statutes; to correct the unlawful inquires upon the Plaintiff's consumer credit report. As the Chief Operating Officer, Mr. Born is ultimately responsible for ensuing compliance at ProMax and is being named in his professional and individual capacities.

6.      The Plaintiff set out 2018 with a goal of purchasing a home within the year. The Plaintiff enrolled in an expensive credit repair program, to assist in accomplishing this goal. The Plaintiff made a concerted effort to ensure any checks run against her credit were not going to damage it, as the 2018 goal was to purchase the home.

7.      Defendants' conduct causing Plaintiff's credit score to drop, a loss of creditworthiness, has prevented the Plaintiff from accomplishing her goals.

8.      In March of 2018 Plaintiff considered purchasing a used vehicle from the first used car dealership by completing a pre-qualification application on the first used car dealership's website. In March of 2018 Plaintiff considered purchasing a vehicle from the second used car dealership, Auto Mart USA LLC ("Auto Mart"). Discovered through discovery in related District of Colorado case 18-CV-01761-MSK-NYW, Auto Mart also used the services of ProMax to violate the Plaintiff.

9.      The application on the first used car dealership's website stated it was performing a "soft inquiry" through the "pre-qualified" application to determine Plaintiff's creditworthiness through approval of loan for a vehicle for personal use. Similarly, the employees at Auto Mart

fraudulently misrepresented to the Plaintiff Auto Mart was conducting a soft inquiry against Plaintiff's consumer credit report to determine Plaintiff's creditworthiness through approval of loan application for a vehicle for personal use. Furthermore, the application at Auto Mart did not contain the personal identification information of the Plaintiff and therefore Auto Mart should not have been able to obtain Plaintiff's consumer credit report.

10.     Whereas consumer credit reports are concerned, a soft inquiry is consistent with the term pre-qualify, in that both do not harm or impact the consumer's credit score or worthiness; most frequently performed by consumers who are unsure of their intent to purchase.

11.     ProMax was responsible for the verbiage on the first used car dealership's "pre-qualification" application including the representations that only a "soft inquiry" would be performed. ProMax is also responsible for conducting the hard inquiries performed by Auto Mart.

12.     The first used car dealership's website contained a credit application which was stated it would "pre-approve" through "pre-qualification" of the Plaintiff's credit application for vehicle financing through a "soft inquiry." The known and intended actions by Defendants were to perform a "hard inquiry" through an application meant to fully qualify applicants; which is what occurred with the Plaintiff. Plaintiff signed a consent form for Auto Mart to perform a soft inquiry only.

13.     It was reasonably expected that Plaintiff would believe the promises on the first used car's website and told to her by Auto Mart.

14.     After agreeing to the terms and conditions, Plaintiff electronically submitted her application through the first used car dealership's website, which was controlled by Defendants, intending only to pre-qualify for vehicle financing through one soft inquiry.

15.     Soft inquiries as it relates to consumer credit reports means the inquiry is not shown to others who make inquiries against the consumer credit report and the inquiry will not adversely affect the credit score.

16.     Plaintiff declined to visit or purchase a vehicle from the first used car dealer which was the extent of the consumer credit transaction authorized.

17.     Through receiving adverse action letters and her consumer credit reports, Plaintiff learned Defendants had performed/permitted **six hard inquires** from the first used car dealership**,** in lieu of the promised and agreed upon **one soft inquiry**, with the following lenders: (1) Flagship Credit Acceptance LLC; (2) Consumer Portfolio Services, Inc.; (3) Ally Bank (twice); (4) ENT Credit Union and (5) Wells Fargo Dealer Services (WFDS). Similarly, Plaintiff learned Defendants had performed/permitted Auto Mart to perform **ten hard inquires** in lieu of the promised and agreed upon **one soft inquiry,** with lenders**:** 1. Ally Bank;   2. Premier Members Credit Union;   3. Open Lending LLC (LendPro); 4. Flagship Credit Acceptance LLC; 5. Pikes Peak Credit Union;  6.Aventa Credit Union; 7. Mountain America Credit Union;   8. Regional Acceptance Corporation; 9. Prestige Financial Services; and 10. Arapahoe Credit Union.

18.     Upon notification of the unauthorized hard inquiries, Defendants' permitted and committed the destruction of evidence by changing content and language on the first used car dealer's website and application, without maintaining a copy for evidence. Defendants have also failed to act, failed to correct or notify Consumer Reporting Agencies of the dispute.

19.     In March 2018, Experian was reporting the Plaintiffs' credit score only 2 points higher than in April 2018. In May 2018, the Plaintiffs' score takes a dramatic plunge as all the 'hard' inquiries catch up to reporting. Currently, the Plaintiffs' score has dropped significantly due to all the unauthorized hard inquires. Nothing else in the consumer credit report has changed to explain the difference in score. This is because of these unauthorized 'hard' inquires. As the unlawful 16 hard inquires fall off Plaintiff's consumer credit report in March and April 2020, Plaintiff's credit score improves proving the detriment suffered.

20.     ProMax's conduct alleged herein substantiates the likelihood of future harm, as ProMax is becoming utilized by many auto dealerships within Colorado and throughout America. It is no coincidence that two dealerships contacted on March 17, 2018 by the Plaintiff both used and continue to use ProMax. Plaintiff is a Colorado Native who will purchase another vehicle in the future, likely to encounter ProMax again. Defendant's conduct alleged is performed after Defendants were aware of Plaintiff's claims, yet Defendants intently remained inactive in removing the unpermitted hard inquires to correct Plaintiff's credit; substantiating exemplary and punitive damages.

## CAUSES OF ACTION

33.     Unless otherwise noted, each Claim is against all Defendants. Plaintiff re-alleges the preceding paragraphs set forth above and herein and incorporate them herein all Claims by reference *inter alia*:

### CLAIM THREE:
### Violations of 15 § U.S.C. 1681 et seq
### FAIR CREDIT REPORTING ACT

### i.   Consumer Reporting Agency

34.     ProMax violates 15 U.S.C. § 1681r by providing the Plaintiff's consumer information to third-party lenders, it did so when it did not possess the authorization, under the terms of "[s]oft inquiry," and "Pre-qualified website;" according to the first used car dealership's website housing the electronic application and the admitted advisements by Auto Mart.

35.     ProMax "for monetary fees …, regularly engages in whole or in part in the practice of assembling [and/]or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." *15 U.S.C. § 1681a(f).*

36.     By and through the preceding ProMax is a "consumer reporting agency" as so defined in 15 U.S.C. § 1681a(f).

37.     ProMax regularly assembles and maintains consumer reports for the purpose of furnishing the consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (1) Public record information and (2) Credit account information from persons who furnish that information regularly and in the ordinary course of business. *15 U.S.C. § 1681a(p).*

38.     By and through the preceding ProMax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as so defined in 15 U.S.C. § 1681a(p). Said aforementioned assembled and maintained consumer reports by ProMax also contain employment, residential and/or tenant histories.

39.     By and through the preceding ProMax is considered a "nationwide specialty consumer reporting agency." *15 U.S.C. § 1681a(x).*

40.     The application for pre-qualification and the subsequent inquiries constitute a credit transaction.

41.     ProMax's webpage fails to satisfy requirements under § 1681c-1(i)(6).

42.     ProMax failed to have reasonable procedures to avoid violations in accordance with § 1681e(a).

43.     ProMax is void of any method for the Plaintiff to request her information, in violation of § 1681g.

44.     As ProMax is void of disclosure requirements under § 1681g, ProMax has also violated § 1681h.

45.     ProMax furnished a report to the first used car dealer and Auto Mart not initiated by the consumer Plaintiff in violation of 15 U.S.C. § 1681b(c)(1)(A).

46.     The aforementioned reports not initiated by the consumer Plaintiff contained information outside the limitations in violation of 15 U.S.C. § 1681b(c)(2)-(3).

47.     ProMax is void of a Notification system in violation of 15 U.S.C. § 1681b(5)-(6).

48.     ProMax was void of authorization to access the Plaintiff's consumer credit report through hard inquiries, therefore ProMax is in violation of § 1681b(f)(1)(2).

49.     Upon notification of dispute, ProMax has failed to perform a reinvestigation or provide notice of dispute to Furnishers and credit reporting agencies, in violation of 15 U.S.C. § 168lc(f).

50.     As a Consumer Reporting Agency ProMax failed to "establish and maintain guidelines for furnishers regarding the accuracy and integrity of information," in violation of 15 U.S.C. § 168li.

51.     ProMax negligently and/or willfully violated the FCRA in the following ways: 1) failing to conduct a reasonable investigation into Plaintiff's disputes regarding the impossible mathematical calculations in violation of 15 U.S.C. § 1681s-2(b); 2) failing through multiple disputes, over the course of a calendar year and a half, also in violation of 15 U.S.C. § 1681i; 3) with malice and/or recklessness, falsely reporting and publishing wholly false and inaccurate information about the Plaintiff

52.     Had ProMax performed an investigation, ProMax would have determined the information was inaccurate, incomplete and/or unverifiable, ProMax was to promptly delete the information, yet has failed to act, in violation of § 1681i(a)(6).

53.     ProMax is void of an automated reinvestigation system in violation of § 1681i(a)(5)(D).

54.     Plaintiff never received a description or results of reinvestigation procedure in violation of § 1681i(a)(6)-(7).

55.     ProMax failed to ensure its clients provided consumers the name, address, and telephone number of the consumer reporting agency that furnished the report to the person," in violation of § 1681m(a)(3).

56.     ProMax regularly engaged in activity, at the time the Plaintiff filled out the online credit application, which would define ProMax as a Consumer Reporting Agency. The Defendants failed to meet the obligations of Consumer Reporting Agencies: ProMax is required to establish a streamlined process, per 15 U.S.C. § 1681j(a)(l)(C)(i) for consumers to request consumer reports, ProMax does not currently possess such process. 15 U.S.C. § 168ls-2(e)(1) requires the Defendants to establish and maintain guidelines for furnishers regarding the accuracy and integrity of information.

57.     Had ProMax been in compliance, Plaintiff would likely not have suffered harm.

58.     ProMax as a nationwide specialty consumer reporting agency as defined in, 15 U.S.C. § 1681a(x), ProMax failed to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statute.

59.     Under the FCRA, as a reseller, ProMax should be listed on the adverse action letter as the CRA., however ProMax was not listed as the CRA on Plaintiff's adverse action letter in violation of § 1681m(a)(2)-(3).

60.     As a pass-through CRA, the actual originating CRA must be listed. ProMax is a vendor who merges and purges the data, thereby a reseller and then becomes a CRA.

61.     The hard inquiries have negatively impacted the Plaintiff's credit score credit worthiness by significantly reducing her credit score and subsequently caused and/or contributed to denials of extensions of credit to the Plaintiff.

62.     By and through the preceding paragraphs, Plaintiff seeks relief under 15 U.S.C. §§ 1681n-o.

63.     Plaintiff has been damaged as alleged within this Complaint in an amount to be determined at trial.

64.     Plaintiff is entitled to all statutory damages and costs.

## ii.     Furnisher of Information to CRA's

65.     Furnishers of information to CRAs,' have additional requirements as stated in 15 U.S.C. § 1681s-2(a)(2)(A), because the Defendants "[r]egularly and in the ordinary course of business furnishes information to one or more CRA's about its "transactions or experiences" with consumers." ProMax regularly reports information to other third party CRA's, which are defined as CRA's in 15 U.S.C. § 1681a(f).

66.     ProMax in the ordinary course of business furnished experience information about the Plaintiff to one or more CRA's through hard inquiries, in violation of 15 U.S.C. § 1681b(a)(3)(A) and 15 U.S.C. § 1681b(a)(3)(F)(i).

67.     ProMax failed the Plaintiff through inaction, including failure to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers which ProMax furnishes to other third party CRA's. Ignoring the guidelines established in appendix E of 12 C.P.R.§ 1022.42.

68.     The terms and conditions ProMax provided to the Plaintiff on the first used car dealership's website that ProMax controlled, did not include authorization for the Defendants to run 'hard' inquiries against Plaintiff's consumer report. Additionally, as the personal identification information of the Plaintiff did not match the information on the credit application submitted by Auto Mart, ProMax therefore violates 15 U.S.C. § 1681b(a)(2), as soon as they run 'hard' inquiries and not the stated "[s]oft inquiries."

69.     15 U.S.C. § 1681b(a)(3)(F), ProMax requested the Plaintiffs' consumer report without permission, thus the request was absent legitimate business reason.

70.     ProMax's failure to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statutes 15 U.S.C. § 1681s-2(a)(2)(A).

71.     ProMax violates Section 623(a)(2) by failing to correct the incorrect inquires on the Plaintiffs' consumer report, upon identification of the issue.

72.     ProMax' has therefore obtained the Plaintiff's consumer information under false pretenses and should be fined and imprisoned under title 18, pursuant to 15 U.S.C. § 1681q.

73.     Pursuant to 12 CFR § 1022.43(e), as ProMax failed to provide the Plaintiff any notice of her claims against them as being considered a frivolous dispute, ProMax was to notify CRA's and have the inquires removed.

74. Upon notification of dispute, ProMax has failed to perform a reinvestigation or provide notice of dispute to Furnishers and credit reporting agencies.

75.     Defendants failure to provide any online applicant a way in which to request a copy of the application or the file, is in violation of statutes 15 U.S.C. § 1681s-2(a)(2)(A).

76.     Defendants failed to disclose at consummation of the transaction the required disclosures pursuant to 15 U.S. Code § 1681g.

77.     By and through the acts and practices described in all paragraphs, ProMax has violated section 609(a)(I) of the FCRA, 15 U.S.C. § 168Ig(a)(I).

78.     The hard inquiries have negatively impacted the Plaintiff's credit score credit worthiness by significantly reducing her credit score and subsequently caused and/or contributed to denials of extensions of credit to the Plaintiff.

79.     By and through the preceding paragraphs, Plaintiff seeks relief under 15 U.S.C. §§ 1681n-o.

80.     Plaintiff has been damaged as alleged within this Complaint in an amount to be determined at trial.

81.     Plaintiff is entitled to all statutory damages and costs.

### iii.     Reseller of Consumer Credit Reports Violations

82.     ProMax assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer

for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced, therefore ProMax is a "reseller" in accordance with 15 U.S.C. § 1681a(u)(1)(2).

83.     ProMax assembled this data for the purpose of furnishing that information to third party lenders and dealers.

84.     ProMax did not possess the written instruction of the Plaintiff in violation of § 1681b(a)(2).

85.     ProMax does not disclose to consumer reporting agencies the identity of the end-user of the report nor the permissible purpose as it did not exist, in violation of § 1681e(e)(1).

86.     ProMax failed to make certifications and reasonable verification efforts in accordance with § 1681e(e)(2)(A)(B).

87.     Once notified of Plaintiff's claims, ProMax failed to perform a reinvestigation in violation of § 1681i(f).

88.     Plaintiff's consumer credit report held a fraud alert, which ProMax failed to verify the identity of the Plaintiff, or contact the Plaintiff; in violation of section 605A(h),(f)

89.     As resellers, ProMax violates Compliance Procedures, § 1681e, through failing to:

>     A.  establish reasonable procedures to ensure reports were re-sold under permissible purposes.
>
>     B.  Ensure the accuracy of the report in violation of § 1681e(b);
>
>     C.  Establish reasonable procedures to ensure the report is resold for a purpose under which the report may be furnished or resold, as when Plaintiff disputed the

inquiries, she was advised there is nothing ProMax can or will do to resolve the issue; in violation of § 1681e(e)(2).

90.     As a reseller, ProMax should be listed on the adverse action notice as the CRA. Furthermore, as a pass-through CRA, the actual originating CRA must be listed. ProMax is a vendor who merges and purges the data, thereby a reseller and then becomes a CRA. ProMax is not listed on the adverse action notice.

91.     The hard inquiries have negatively impacted the Plaintiff's credit score credit worthiness by significantly reducing her credit score and causing or contributing to the denial of the extensions of credit.

92.     By and through the preceding paragraphs, Plaintiff seeks relief under 15 U.S.C. §§ 1681n-o.

93.     Plaintiff has been damaged as alleged within this Complaint in an amount to be determined at trial.

94.     Plaintiff is entitled to all statutory damages and costs.

95.     The sheer number of FCRA violations constitutes Defendants conduct as extreme and outrageous.

## CLAIM SIX:
## FRAUDULENT MISREPRESENTATIONS IN ADVERTISING
### iv.     Violations of C.R.S. § 5-3-110

96.     As the administrators for the first used car dealer's website, ProMax is responsible for false advertisements it allows.

97.     ProMax has allowed and added advertisements on the first used car dealer's website, which contain statements regarding credit transactions with used car dealer, which are in fact credit transactions with ProMax.

98.     Defendants knew the soft inquiry and pre-qualification advisements were false and/or misleading.

99.     Advertisements posted online by ProMax for the first used car dealer's website do not contain appropriate disclosures.

100.    Misrepresentations were material to the Plaintiff.

101.    Plaintiff's reliance was justified.

102.    Plaintiff's reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences to Defendants' representations, actions, and/or inactions. Defendants' misrepresentations were done so intently, only to induce the Plaintiff into permitting a hard inquiry against her consumer credit report. Defendants' actions resulting in the Plaintiffs' injuries as described herein and damaged in the amount to be proven at trial.

## CLAIM SEVEN:
## BREACH OF CONTRACT

103.    The online "pre-qualification" application submitted by Plaintiff on or about March 17, 2018, created a contract between ProMax and Plaintiff.

A material part of the contract was the fact one soft inquiry was being performed.

104.    As only "[s]oft inquiry[ies]," were authorized according to the Terms and Conditions, on the online "pre-qualification" credit application, the written contract between ProMax and the

Plaintiff, was void of Plaintiff's authorization for the six inquires performed by the first used car dealer.

105.    Plaintiff has performed all or substantially all, of the obligations imposed under the Terms and Conditions.

106.    ProMax breached its pre-qualification application Agreement with the Plaintiff.

107.    ProMax's performance of six hard inquiries were neither set by nor assessed in accordance with the reasonable expectation of the parties; constituting breach.

108.    Plaintiff's reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness.

109.    Plaintiff is entitled to damages proven through trial.

110.    Plaintiff is entitled to her reasonable fees and costs.


# CLAIM EIGHT:
# OUTRAGEOUS CONDUCT

111.    Defendants engaged in extreme and outrageous conduct of violating various Colorado and Federal laws, recklessly or with the intent of causing the Plaintiff severe emotional distress, as evidenced by Defendants' refusal to correct their errs, even after the destruction of evidence proving Plaintiff's claims.

112.    By and through actions and inaction stated in all previous paragraphs and Claims, Defendants' conduct is outrageous and performed with recklessly or knowingly to cause harm to Plaintiff.

113.    By and through preceding paragraphs, Defendants were negligent.

114.     Defendants' negligence in failing to abide by the terms and conditions of Plaintiff's application, thereby creating an unreasonable risk of physical harm to the Plaintiff when having knowledge of the peril Plaintiff has suffered, knowledge of Plaintiff's physical and mental health suffering; unnecessarily causing the Plaintiff fear, injuries, and losses to be proved at trial.

115.     As a result of Defendants' outrageous conduct, Plaintiff has suffered emotional distress incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced inter alia emotional distress, physical injuries, mental anguish including humiliation and fear.

116.     Plaintiff is entitled to damages proven through trial.

## CLAIM NINE:
## Violations of Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, et seq. ("UCCC");

118.     By agreeing to perform a soft inquiry to pre-qualify the Plaintiff for a used car, Defendants and Plaintiff participated in a "Consumer Credit Sale" as defined in C.R.S. § 5-1-301(11)(a); thereby a "Consumer credit transaction" C.R.S. § 5-1-301(12).

119.     The written agreement did not permit ProMax to allow the first used car dealership to submit Plaintiff's information to six lenders nor perform the six hard inquires. The written agreement did not permit ProMax to allow Auto Mart to submit Plaintiff's information to ten lenders nor perform the ten hard inquires.

120.     The pre-qualification application Agreement and credit authorization provided to Plaintiff was deficient, ineffective, deceptive, conducted in bad-faith, unfair, unconscionable, and

misleading in that it does not state ProMax had authorization to perform any hard inquiries against the Plaintiff's consumer credit report.

121.    By and through conduct of ProMax described in all paragraphs, ProMax's conduct can be construed as unconscionable, in violation of C.R.S. § 5-5-109 and C.R.S. § 5-3-210.

122.    ProMax further violates the UCCC in by reporting incorrect information for years, and upon notification and multiple opportunities to resolve; failing to do so.

123.    The reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

124.    Plaintiff is entitled to damages proven through trial.

125.    Plaintiff is entitled to her reasonable fees and costs.

## **CLAIM TEN:**
## **Violations of the Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-301, et seq. ("UCC")**

126.    Colorado recognizes an obligation to conducting all commerce in good-faith, "Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement. *C.R.S. § 4-1-304.*

127.    ProMax breached their duty to act in good-faith with the Plaintiff by:

> (a) failing to ensure advertisements regarding credit transactions with ProMax were accurate;

(b) ProMax had a duty to perform one soft inquiry against the Plaintiff's consumer credit report and ProMax performed/permitted six hard inquiries against the Plaintiff's consumer credit report.

(c) ProMax had a duty to perform corrections and investigations as stipulated in statute and failed to do so.

(d) ProMax destroyed evidence upon notification of Plaintiff's claims, depriving Plaintiff of the right to inspect and test the website; failing to preserve evidence of goods in dispute in accordance with C.R.S. § 4-2-515.

128.    As a result of ProMax's actions and inactions described herein, Plaintiff has incurred actual damages including but not limited to, loss of employment, housing, creditworthiness. Plaintiff has experienced *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

## CLAIM ELEVEN:

## Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ("CCPA")

129.    Defendants conduct alleged in this Complaint and relating to Defendants refusal or failure to correct errors on the Plaintiff's consumer credit report violates the Colorado Consumer Protection Act because they (1) constitutes unfair and/or deceptive acts or practices; (2) are committed in the course of Defendants' business; (3) have a pervasive public interest impact and have the potential to harm a substantial portion of the public; and (4) have caused injuries to the Plaintiff.

130.    As a CRA Defendants violate the CCPA in by failing to correct the overtly obvious errors multiple times.

131.    Defendants' violations of the CCPA were committed in bad faith, evident in their failure to correct multiple times.

132.    ProMax exhibits further deceptive behavior by destroying evidence upon notification of Plaintiff's claims.

133.    ProMax's unauthorized hard inquiries and subsequent reporting to credit bureaus is not only unfair and deceptive, but also a violation of the CCPA.

134.    Plaintiff's injuries were unavoidable as Defendants' hold all the power and unilaterally control the information reported, the request to correct, and the ability to correct themselves. Plaintiff has suffered damages as a direct result of Defendant's violations of the CCPA.

135.    Defendants are liable to Plaintiff in amount to be determined at trial, including statutory treble damages. Plaintiff respectfully requests this Court award them the following damages pursuant to Colo. Rev. Stat. § 6-1-113(2)(a).  The greater of:

      (a)    the amount of actual damages sustained; or

      (b)    five hundred dollars; or

      (c)    three times the amount of actual damages sustained.

136.    Plaintiff respectfully requests that this Court award her fees and costs associated with this action pursuant to Colo. Rev. Stat. § 6-1-113(2)(b) and enjoin Defendants from continued unlawful conduct alleged.

## CLAIM TWELVE:
## NEGLIGENT MISREPRENSATIONS IN TERMS AND CONDITIONS OF CREDIT CHECK

137.    As the administrators for the first used car dealer's website, ProMax is responsible for false advertisements it allows.

138.    ProMax has allowed and added advertisements on the first used car dealer's website, which contain statements regarding credit transactions with used car dealer, which are in fact credit transactions with ProMax.

139.    Defendants should have known the soft inquiry and pre-qualification advisements were false and/or misleading.

140.    Advertisements posted online by ProMax for the first used car dealer's website do not contain appropriate disclosures.

141.    Misrepresentations were material to the Plaintiff.

142.    Plaintiff's reliance was justified.

143.    Plaintiff's reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear; all direct and foreseeable consequences to Defendants' representations, actions, and/or inactions.

## CLAIM THIRTEEN:  Shane Born
## RESPONDEAT SUPERIOR

144.    ProMax is responsible for the actions of its employees, agents, and/or subscribers.

145.    Shane Born is responsible for the actions of ProMax customers, employees and agents which use ProMax services as Chief Operating Officer and having been directly informed by Plaintiff of the damages sustained; including but not limited to used car dealerships.

146.    Mr. Born intently remains inactive once aware of Plaintiff's claims, refusing to take any corrective actions to make Plaintiff's credit whole.

147.    Defendants were negligent in their care and/or treatment of Plaintiff while acting within the course of their employment and/or authority.

148.    As direct and proximate result of the negligent conduct of Defendants, Plaintiff has suffered injuries and damages as fully described above.

## CLAIM FOURTEEN:  Shane Born
## NEGLIGENCE

149.    Shane Born owes consumers in general and Plaintiff in particular, general duties to use reasonable care, act commercially responsible with regards not only to their own personal conduct, but also to the Plaintiff's consumer credit report and the information contained within said report.

150.    Shane Born willfully, wantonly, and deliberately breached said duties in by failing to correct overt errs given multiple opportunities; failing to remove the unlawful hard inquiries.

151.    Mr. Born's willful negligence is displayed through the vast amount of opportunity he possessed to correct the unlawful hard inquiries since 2018.

152.    The fact that the unlawful hard inquiries are still present, Mr. Born has failed multiple duties outlined in multiple statutes. There was and continues to be foreseeable and likely injuries to the Plaintiff that far outweighs any alleged social utilities in Defendants' conduct.

153.    Defendants knew and/or reasonably expected the Plaintiff being adversely affected by the unlawful hard inquiries.

154.    The Plaintiff's reliance upon the representations of soft inquiry and pre-qualification was justified, as Plaintiff understood the definition of each.

155.    Plaintiff is void of any burden guarding against harm as all injuries should have never happened or been perpetrated against Plaintiff.

156.    A finding of a violation of the CCPA also constitutes negligence.

157.    The reliance upon said representations has caused Plaintiff's actual damages including but not limited to, loss of employment, housing, creditworthiness, in addition to *inter alia* emotional distress, physical injuries, mental anguish including humiliation and fear.

158.    Plaintiff is entitled to damages proven through trial.

159.    Plaintiff is entitled to her reasonable fees and costs.

## E. REQUESTS FOR RELIEF cont

**WHEREFORE**, Plaintiff requests jury trial on all claims so triable and judgment as follows:

I.      Award actual damages to the Plaintiff in accordance with 15 U.S.C. § 1681n(a)(1)(B);

II.     Award punitive damages to Plaintiff in accordance with 15 U.S.C. § 1681n(a)(2);

III.    Award Plaintiffs' costs and attorney's fees in accordance with 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); C.R.S. § 5-5-206 and C.R.S. § 4-5-111(c)(d)(e)(f);

**IV.**　　　All statutory damages awarded to the Plaintiff, calculated separately for each statutory violation. Plaintiff believes statutory damages be counted at the maximum, $1,000 per violation for Defendants' willfully negligent conduct, that each violation be tallied by the day, and per credit report affected. Plaintiff's credit report has been adversely affected each and every day following March 17, 2018, up to and through the known hard inquiry maximum time period allowed on Plaintiff's credit report, of two calendar years, March 17, 2020; up to and through each and every day the Plaintiff has and will likely suffer in pain as a direct result of Defendants' conduct, the rest of her life, a minimum of forty years, 14,600 days. Thus, Plaintiff is entitled to $1,000x4x730x14,600 = $42,632,000,000.

**V.**　　　Maximum pre and post judgement interest awarded on all allowable damages for the Plaintiff;

**VI.**　　　Special damages awarded to the Plaintiff;

**VII.**　　　In accordance with C.R.S.§ 5-6-113, protect consumers nationwide by Declaring ProMax's practices unconscionable, ordering injunctive relief; requiring ProMax's strict compliance of all Acts violated herein.

**VIII.**　　　Declare Defendants to have breached the terms and conditions of the contracts and provide injunctive relief on behalf of Plaintiff who so desires:

    a.　Defendant will send a letter to each CRA;

        i.　Experian; &

        ii.　Transunion; &

        iii.　Equifax; &

        iv.　SageStream; &

          v.   Innovis;

      b.   Within letter, request each hard inquiry that was authorized illegally be removed;

      c.   A copy of each correspondence will be sent to the Plaintiff;

      d.   Defendants will repeat efforts, until all fraudulent hard inquiries are removed from all consumer credit reports;

**IX.**      Award actual damages to Plaintiff, due to multiple breaches of contract;

**X.**      Award actual and consequential damages liberally pursuant to C.R.S. §§ 6-1-101 et. seq., 6-1-113, C.R.S. § 4-1-305 and C.R.S. § 4-2-715;

**XI.** Disgorgement of the ill-gotten gains received from the bad-faith, fraudulent behavior;

**XII.**      All statutory damages according to proof;

**XIII.**      In accordance with C.R.S. § 5-5-109(6) provide damages in addition to all other remedies to the Plaintiff;

**XIV.**      Award treble damages in accordance with C.R.S § 6-1-113(2)(a)(III), (2.3);

**XV.**      Other relief the Court finds appropriate awarded to the Plaintiff.