IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:20-cv-00451-SKC

TIFFANY GRAYS,

Plaintiff,

v.

BLACKHAWK ACQUISITION, LLC,

Defendant.

---

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (DKT. 79) AND DENYING AS MOOT
## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. 70)

---

This lawsuit is the third in a series brought by Plaintiff Tiffany Grays arising from her attempt to purchase a vehicle in March 2018.[1] In the first two actions, she sued two auto dealerships for various claims, including alleged violations of the Fair Credit Reporting Act (FCRA). The two dealerships each pulled Grays' credit report through Defendant BlackHawk Acquisition, a credit report reseller, at the time when she made inquiries with each dealership into purchasing a vehicle.

Grays has now sued BlackHawk[2] for its alleged violations of the FCRA, and

---

[1] See the *Auto Mart* and *TSG Auto* citations *infra* n.4.

[2] Grays also sued Shane Born but the Court previously dismissed the claims asserted against him. Dkt. 61, p.11. BlackHawk does business as ProMax. The Court refers to

she asserted related state law claims. Dkt. 52 (Third Amended Complaint, or "TAC").

The Court has jurisdiction over Grays' FCRA claim(s) under 28 U.S.C. § 1331. It has

jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.[3]

After the close of the discovery period, BlackHawk filed its Motion for

Summary Judgment (MSJ) (Dkt. 79), which is fully briefed and ripe for decision,

seeking judgment in its favor on all remaining claims. Grays earlier filed a Motion

for Judgment on the Pleadings which sought to strike BlackHawk's first, second, fifth,

and eighth affirmative defenses. Dkt. 70. Because the Court finds the undisputed

material facts show that Grays cannot prove one or more elements of each of her

asserted federal and state law claims, the Court GRANTS the MSJ. And based on

---

BlackHawk rather than its d/b/a name.

[3] Grays also asserts diversity jurisdiction under 18 U.S.C. § 1332. She alleges BlackHawk is "incorporated" under the laws of Delaware and has a principal place of business in Iowa. But BlackHawk is a limited liability company (LLC), not a corporation. In the Tenth Circuit, the citizenship of each member of the LLC must be considered, rather than the LLC's principal place of business. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015). BlackHawk filed a Fed. R. Civ. P. 7.1 Disclosure Statement indicating only that it is owned 100% by SNH Auto Group LLC, yet another LLC. Dkt. 27. This disclosure is unhelpful because it fails to properly disclose the member or members of this additional LLC and the respective citizenship of those members. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1234. Therefore, on this record, the Court cannot properly find diversity jurisdiction exists. But this is of no moment due to the Court's exercise of supplemental jurisdiction over the state law claims under the circumstances of this case. *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (supplemental jurisdiction over state law claims "is extended at the discretion of the court").

that ruling, the Court DENIES Grays' Motion for Judgment on the Pleadings as MOOT.

## A. LEGAL STANDARDS

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* A mere "scintilla of evidence," however, is insufficient to avoid summary judgment. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009). And conclusory

statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999), *cert. denied*, 528 U.S. 933 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F. Supp. 2d 1121, 1123 (D. Colo. 2000). Instead, a nonmovant "must proffer facts such that a reasonable jury could find in her favor." *Rice*, 166 F.3d at 1092.

A nonmovant who bears the burden of persuasion at trial may not simply rest on their pleadings. They must go beyond the pleadings and identify specific facts, supported by admissible evidence in the event of trial, from which a reasonable jury could find for the nonmovant. *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000). To accomplish this, the nonmovant must identify facts with reference to affidavits, deposition transcripts, or exhibits incorporated therein. *Id.* The Court has no obligation to scour the record in search of evidence to support any factual assertions, and where inadequate record citations have been made, the court may ignore them. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("Without a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence . . . ."); *see also Mitchell*, 218 F.3d at 1199 ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). This is because judges "are not like pigs, hunting for truffles buried in briefs." *Gross*, 53 F.3d at 1546 (quotation omitted). And if a nonmoving party fails to address a moving party's argument concerning a claim, the nonmoving party is deemed to have abandoned that claim. *See Hinsdale v. City of*

4

*Liberal*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming district court's grant of summary judgment on plaintiff's claims because he abandoned his claims "by failing to address them in his response to defendants' motion for summary judgment"); *see also Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (by failing to file a response, plaintiff "waived the right to file a response and confessed all facts asserted and properly supported in the summary judgment motion"); *Grays v. Navient Sols., LLC*, No. 1:20-cv-452-NYW-SKC, 2023 WL 2826288, at *2 (D. Colo. Feb. 8, 2023), *report and recommendation adopted*, 2023 WL 2826287 (D. Colo. Mar. 10, 2023) ("When, as here, a responding party fails to address the properly asserted and supported facts, those facts are deemed confessed.); Fed. R. Civ. P. 56(e).

Because Grays is not an attorney, the Court construes her filings and related submissions liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court may neither act as her advocate nor construct arguments or legal theories for her in the absence of any reference to those issues in her filings. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990). The latter is particularly acute where, as here, Grays is an experienced *pro se* litigant. She has filed and prosecuted numerous cases in this district court with varying degrees of success. Many of those cases have involved claims she asserted under the FCRA and related state statutes. As of the filing of this Order, Grays has filed nine cases

(including this case) *pro se* in this judicial district since 2018.[4] Even still, she receives the benefit of a liberal construction of her pleadings despite being a frequent filer. *Johnson v. Reyna*, 57 F.4th 769, 775 (10th Cir. 2023) ("We will continue to construe all *pro se* plaintiffs' pleadings liberally, even if they come from frequent filers[.]").

## B.  RELEVANT PROCEDURAL BACKGROUND

BlackHawk did as required and filed its MSJ and the accompanying Statement of Undisputed Material Facts with citations to the record and appropriate evidence consistent with Fed. R. Civ. P. 56(c)(1). Dkts. 79, 79-1. Grays, however, did not fully comply. She failed to address BlackHawk's arguments concerning why it believes it should be granted summary judgment on all remaining claims. Dkt. 83, pp.1-4. Grays instead expends her summary judgment argument raising a discovery dispute for the first time regarding the amount of time she was able to depose Shane Born individually and as BlackHawk's Rule 30(b)(6) designee. *Id.* In raising this issue now in response to the MSJ, she claims she "cannot fully defend her claims nor argue

---

[4] The nine cases are listed as follows: *Grays v. Garcia et al.*, 1:23-cv-02856-SBP (D. Colo. Oct. 20, 2023); *Grays v. Munn et al.*, 1:22-cv-00926-SKC-KAS (D. Colo. April 15, 2022); *Grays v. Navient Solutions, LLC et al.*, 1:20-cv-00452-NYW-SKC (D. Colo. Feb. 20, 2020); *Grays v. BlackHawk Acquisition, LLC et al.*, 1:20-cv-000451-SKC (D. Colo. Feb. 20, 2020); *Grays v. Kittredge CO Partners, LLC et al.*, 1:20-cv-00208-WJM-SKC (D. Colo. January 24, 2020); *Grays v. KeyBank Nat'l Ass'n*, 1:20-cv-00207 (D. Colo. January 24, 2020); *Grays v. Granicus, LLC et al.*, 1:18-cv-02271-CMA-NRN (D. Colo. August 31, 2018); *Grays v. TSG Auto et al.*, 1:18-cv-01762-SKC-STV (D. Colo. July 10, 2018); *Grays v. Auto Mart USA, LLC et al.*, 1:18-cv-01761-MSK-NYW (D. Colo. July 10, 2018).

6

against alleged facts provided to the Court."[5] *Id.* at p.4. She also argues the Court "should deny the Defendant all relief requested and award Plaintiff judgment on the FCRA claims." *Id.* Despite these arguments, Grays goes on to provide her admissions and denials to the facts listed in BlackHawk's Statement of Undisputed Material Facts, and appropriately provides her own Statement of Additional Undisputed Material Facts. *Id.* at pp.5-10.

While Grays denies many of BlackHawk's purported undisputed material facts, the bulk of her denials consist of unsubstantiated and conclusory allegations that carry no probative value on summary judgment. *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098-99 (10th Cir. 2019) (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)). At this stage, a plaintiff is required to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event

---

[5] The Court declines to consider Gray's discovery dispute at this late juncture. First, she took the two depositions of Born on March 6 and 7, 2023 (Dkts. 83-2, p.1; 83-3, p.1), and the discovery cut-off was March 7, 2023 (Dkt. 67, p.1). BlackHawk filed its MSJ on April 6, 2023. Dkt. 80. And Grays filed her Response to the MSJ on May 26, 2023. Grays had ample time both after the close of discovery and after BlackHawk filed its MSJ to raise the discovery dispute before her responsive pleading was due, but she did not. Her raising the issue now in response to the MSJ is untimely. Second, Grays has not complied with Fed. R. Civ. P. 56(d) because she has not shown by affidavit or declaration that, for specified reasons, she cannot present facts essential to justify her opposition to summary judgment. And third, her argument fails to comply with Rule 7.1(d) of the Local Rules of Practice - Civil. D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (*pro se* litigants must "follow the same rules of procedure that govern other litigants.").

of trial which a rational trier of fact could find for the nonmovant." *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1232 (D. Kan. 2007) (cleaned up). Accordingly, for purposes of summary judgment, the Court finds as undisputed all facts which Grays failed to properly refute or support under Fed. R. Civ. P. 56(e), and ignores her statements of additional undisputed material facts that she failed to support with competent evidence under Rule 56(c).[6] Regarding those proffered facts that Grays argues are disputed and for which she cited competent evidence, the Court finds her cited evidence does not, in fact, contradict the material fact identified by BlackHawk. The result is that, based on the Court's independent review of the record and the Rule 56(c)(1) and (e) evidence, the Court finds the undisputed material facts to be consistent with BlackHawk's Statement of Undisputed Material Facts. Dkt. 79-1.

## C. UNDISPUTED MATERIAL FACTS

The TAC asserts the following 10 claims for relief against BlackHawk: (1) "Fraudulent Concealment of Material Facts" (*id.* at p.4); (2) "Fraudulent Misrepresentations of Material Facts" (*id.* at p.5); (3) "Violations of 15 § U.S.C. 1681 et seq Fair Credit Reporting Act" (*id.* at pp.12-20); (4) "Fraudulent Misrepresentations In Advertising [ ] Violations of C.R.S. § 5-3-110" (*id.* at pp.20-21);

---

[6] Grays proffered seven additional facts, but none are availing. Her record citations for the first three facts do not support the facts as she framed them. Dkt. 84-1, pp.18-20. And the Court cannot consider her remaining facts because she either cited no evidence or did not include copies of the evidence she did cite. *Id.*

(5) "Breach of Contract" (*id.* at pp.21-22); (6) "Outrageous Conduct" (*id.* at pp.22-23); (7) "Violations of Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, et seq. ('UCCC')" (*id.* at pp.23-24); (8) "Violations of Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-301, et seq. ('UCC')" (*id.* at pp.24-25); (9) "Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ('CCPA')" (*id.* at pp.25-26); and (10) "Negligent Misreprensations (sic) In Terms and Conditions of Credit Check" (*id.* at p.27).

BlackHawk was a reseller consumer reporting agency to auto dealerships at the time of the events here. Facts, ¶2.[7] Two of those dealerships were Auto Mart and TSG. BlackHawk did not compile or maintain credit data. *Id.* at ¶4. Rather, as a reseller, it requested consumer credit reports from originating consumer reporting agencies and then resold those reports to its clients—here, Auto Mart and TSG—who certified they had a permissible purpose to obtain the credit reports. *Id.* BlackHawk also provided certain website services to auto dealerships. *Id.* at ¶3.

Grays visited Auto Mart in person on March 17, 2018, after looking at vehicles online. *Id.* at ¶5. While there, Grays signed a document that stated,

> For the purpose of securing credit, by my signature below authorize (sic) Auto Mart USA to check my employment history and obtain information about credit experiences with me, including a credit report from one or more consumer reporting agencies (credit bureaus) in connection with

---

[7] Citations to "Facts, ¶___" are to the Reply to Statement of Undisputed Material Facts (Dkt. 84-1) prepared by the parties in accord with this Court's Standing Order for Civil Cases. *See* Crews Standing Order for Civil Cases, § C.4.c.

my application for credit. I certify that the information I have given on my credit application is true and correct, to the best of my knowledge.

*Id.* at ¶6; Dkt. 79-4, p.2. Auto Mart subsequently ordered Grays' credit report from BlackHawk as a reseller. Facts, ¶7. When it did, it certified to BlackHawk that it had a permissible purpose to request Grays' credit report. *Id.* at ¶8. In her deposition, Grays' testified that only Auto Mart employees made representations to her about whether Auto Mart's credit inquiry would be a soft or hard inquiry. *Id.* at ¶19.

Regarding TSG Auto, BlackHawk provided TSG with certain services related to TSG's website. While BlackHawk created the code for the "terms and conditions" that appeared on the credit application on TSG's website, BlackHawk did not host the website or the TSG credit application itself. *Id.* at ¶¶3, 20. Due to an error in the coding BlackHawk provided for the TSG website credit application, the credit application contained the phrase "soft inquiry," but BlackHawk had no knowledge of this coding error or its result at the time Grays applied with TSG. *Id.* at ¶¶21, 22.

Grays visited the TSG website on the same day she physically visited Auto Mart's dealership. *Id.* at ¶9. She submitted a credit application through TSG's website because she was interested in financing options for a vehicle. *Id.* at ¶10. As a result, TSG ordered Grays' credit report from BlackHawk as a reseller. *Id.* at ¶11. TSG similarly certified to BlackHawk that it had a permissible purpose to obtain the credit report. *Id.* at ¶12.

After reselling Gray's credit reports to Auto Mart and TSG on March 17, 2018,

BlackHawk never resold any other credit reports concerning Grays. *Id.* at ¶13. Nor, at any time, did BlackHawk maintain inquiry information in a file for use in consumer reports. *Id.* at ¶14. Instead, any inquiry information in reports resold by BlackHawk came from the credit bureaus. *Id.*

BlackHawk never provided its services to Grays. *Id.* at ¶17. Nor did it bargain for, or receive, anything of value from her. *Id.* And it never attempted to collect a debt from her. *Id.* at ¶18. Both Auto Mart and TSG contacted BlackHawk after they received complaints from Grays about hard inquiries from each of them appearing on her credit report. *Id.* at ¶24. Based on these calls, BlackHawk investigated Grays' complaints and determined she had authorized both Auto Mart and TSG to obtain her credit reports in connection with her requests for financing. *Id.* at ¶25. BlackHawk thus determined each company had a permissible purpose to obtain Grays' credit reports. *Id.* BlackHawk also promptly corrected the coding error that resulted in the phrase "soft inquiry" appearing in the terms and conditions on the TSG website. *Id.* at ¶26.

Other than Grays' complaint, BlackHawk received no other complaints about any other consumer related to the "soft inquiry" language that appeared on the TSG website. *Id.* at ¶27. And Grays has not identified any other consumer who was negatively affected by the "soft inquiry" language. *Id.* at ¶30. In fact, all conduct that Grays now attributes to BlackHawk as causing her harm occurred after March 17, 2018. *Id.* at ¶28. Grays was not even aware BlackHawk existed until at least a year

after she submitted the credit application through the TSG website. *Id.* at ¶29.

Before Grays contacted Auto Mart and TSG, she already had a troubled credit history—she was late paying off certain loans, had other loans referred to collection agencies, and she filed for bankruptcy in 2015. *Id.* at ¶31. The only adverse action letters she produced and that she claims represent denials of credit resulting from BlackHawk's conduct include a March 15, 2020 letter from Synchrony Bank, and a March 20, 2020 letter from West Creek Financial.[8] *Id.* at ¶32.

The Synchrony Bank letter identifies the "most significant reasons" for that bank denying her credit as the "[r]atio of accounts ever delinquent to total accounts is too high," "[t]oo few revolving accounts," "[n]o retail account information," and "[n]o mortgage information." *Id.* at ¶33; Dkt. 79-9, p.2. The letter also identified the "[n]umber of inquiries on credit report" as a "key factor" adversely affecting her credit score, but Grays has been unable to quantify the impact, if any, the number of credit inquiries had. Dkt. 79-9, p.4; Facts, ¶84-1.

The West Creek Financial letter states West Creek was unable to approve Grays' credit application for the following reasons: "[e]xcessive obligations" and "recent banking history." Dkt. 79-10, p.2. It identified the following "key factors" that adversely affected her credit score: "1. There is a bankruptcy on your credit report[;] 2. You have too many delinquent or derogatory accounts[;] 3. Lack of sufficient credit

---

[8] Grays cites additional letters in her response, but she failed to include them with her filing.

history[;] 4. The date that you opened your oldest account is too recent[;] 5. Number of inquiries impacted your score but effect was not significant[.]" *Id.*; Facts, ¶34. And again, Grays cannot quantify the impact BlackHawk's alleged actions had on her credit score. *Id.* at ¶35.

### D. ANALYSIS

As stated earlier, the Court finds Grays' failure to address any of BlackHawk's legal arguments regarding why it should be awarded summary judgment on all claims results in her abandoning those claims. For this reason alone, the Court finds BlackHawk's MSJ should be granted—BlackHawk has properly supported its arguments with evidence satisfying Fed. R. Civ. P. 56(c). *See Hinsdale*, 19 F. App'x at 768. But in view of Grays' status as a *pro se* litigant, under the circumstances of this case, the Court alternatively analyzes the merits of BlackHawk's arguments.

### 1. Federal Law Claim: Violations of the FCRA

The Third Amended Complaint (TAC) alleges FCRA violations against BlackHawk in a scattershot fashion. It generally divides the allegations into three subsections—"Consumer Reporting Agency," "Furnisher of Information to CRA's," and "Reseller of Consumer Credit Reports Violations." *See* Dkt. 52, pp.12-20. But it also alleges violations that Grays cannot legally pursue, such as claims raising criminal liability under the FCRA. *Id.* at p.13. The Court liberally construes Grays' FCRA claim as BlackHawk did in its MSJ as raising claims that BlackHawk violated the FCRA because it provided Grays' credit report to Auto Mart and TSG without a

13

permissible purpose, it failed to conduct a proper investigation of her disputes, and it failed to maintain procedures to assure maximum possible accuracy of her credit report.[9]

### a. Permissible Purpose

BlackHawk has presented credible and unrefuted evidence that it had a reason to believe the auto dealerships had a permissible purpose when they requested Grays' credit report. The FCRA states that a consumer reporting agency may provide a consumer credit report to "a person which [the consumer reporting agency] has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . ." 15 U.S.C. § 1681b(a)(3)(A). BlackHawk's contract with Auto Mart required Auto Mart to (1) "comply with all provisions of the [FCRA]" and (2) to "request information only for Customer's exclusive use, and to make inquiries only in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to the consumer for automobile, van and truck sales and leasing[.]" Dkt. 79-5, p.5. Similarly, BlackHawk's contract with TSG included the following: TSG "warrants that it is an automobile dealership and has a permissible purpose for obtaining credit reports in accordance with the [FCRA] and it is familiar

---

[9] Grays did not oppose this liberal construction of her FCRA claim when responding to the MSJ.

with the requirements of the [FCRA]." Dkt. 79-6, p.3 ¶1. It further provides TSG "will order credit reports for its exclusive use, solely for the permissible purpose(s) defined herein." *Id.* at ¶2.

Based on these contracts, the undisputed material facts support that BlackHawk was justified in determining it had a "reason to believe" each auto dealership had a permissible purpose to request Grays' credit report. *See Demaestri v. Asset Acceptance Cap. Corp.*, No. 11-cv-01671-WJM-MJW, 2012 WL 1229907, at *4 (D. Colo. Mar. 14, 2012) (if a party has "reason to believe" a permissible purpose exists, the party may access the consumer's credit report). Grays has failed to produce competent evidence to create a genuine issue for trial on this claim.[10]

### b. Investigation or Reinvestigation of Grays' Disputes

Grays alleges BlackHawk failed to investigate or reinvestigate her disputes concerning her credit reports. But BlackHawk correctly points out that it is merely a reseller consumer reporting agency; the FCRA imposes different investigation requirements on resellers.

Critically, a reseller's reinvestigation duties do not arise unless the reseller "receives notice from a consumer." *Id.* at § 1681i(f)(2) ("If a reseller receives a notice from a consumer of a dispute concerning the completeness or accuracy of any item of

---

[10] The focus here is not on whether Auto Mart or TSG in fact had a permissible purpose. It is instead on whether BlackHawk had a reason to believe they possessed the required permissible purpose.

information contained in a consumer report on such consumer produced by the reseller, the reseller shall . . . .". And a reseller is exempted from the broader reinvestigation requirements, except for those enumerated in § 1681i(f)(2). *Id.* at § 1681i(f)(1).

Here, it is undisputed Grays never contacted BlackHawk to dispute the completeness or accuracy of any information contained in the credit reports BlackHawk sold to Auto Mart and TSG. Facts, ¶29. Rather, the Court understands Grays' investigation or reinvestigation complaints to arise from the fact that those credit reports resulted in hard credit inquiries instead of soft credit inquiries. The FCRA does not impose an investigation or reinvestigation obligation on a reseller consumer reporting agency under this circumstance.[11] The undisputed material facts thus do not raise any triable issues on this claim.

### c.   Procedures Re: the Accuracy of Grays' Credit Report

BlackHawk observes, and the Court agrees, that "[c]onstruing the TAC liberally, it is possible Plaintiff is also alleging violations of 15 U.S.C. § 1681e(b) for failure to maintain reasonable procedures to assure maximum possible accuracy."

---

[11] The Court also notes the crux of Grays' reinvestigation complaints appear to focus more on the outcome versus the investigation itself. But the investigation requirement is procedural, not outcome driven. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) ("We emphasize that the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate.").

Dkt. 79, p.9. Section 1681e(b) provides, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

But again, Grays neither alleges nor has she adduced evidence of the inaccuracy of the information in the credit reports BlackHawk furnished to Auto Mart and TSG. The only claims of inaccuracy she makes are that Auto Mart and TSG made hard credit inquiries rather than soft credit inquiries. And that complaint has nothing to do with the accuracy of the credit reports BlackHawk resold from consumer reporting agencies to Auto Mart and TSG.

For all of these reasons, there are no triable issues of disputed material fact involving Grays' FCRA claim.

### 2. State Law Claims

#### a. Fraudulent Concealment of Material Facts

Grays asserts a claim she styles as "fraudulent concealment of material facts." She alleges BlackHawk concealed material facts, which the Court liberally construes to be BlackHawk's alleged concealment that a hard credit inquiry would be performed instead of a soft credit inquiry. Dkt. 52, p.4.[12] Addressing the substance of the claim,

---

[12] Grays also appears to allege that BlackHawk is "not following the promises in [its] client's Privacy Policy." Dkt. 52, p.4. But it is not apparent to the Court how such an allegation, if true, could lead to liability under this claim because Grays has not alleged BlackHawk concealed any facts relevant to its alleged failure to follow its

17

the Court finds that summary judgment is warranted.

"The elements of fraudulent concealment, as set out in the leading case, *Morrison v. Goodspeed,* 68 P.2d 458 (Colo. 1937), are: (1) concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages." *Kopeikin v. Merchants Mortg. and Trust Corp.*, 679 P.2d 599, 601 (Colo. 1984). Here, the Court finds BlackHawk has shown a lack of evidence to support the second, fourth, and fifth elements of this claim. *See Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1212 (10th Cir. 2002).

The material undisputed facts show credible, unrefuted evidence that BlackHawk did not have knowledge (actual or otherwise) of the incorrect "soft inquiry" wording on TSG's website (Facts, ¶22) when Grays used the website, and only Auto Mart employees made representations to Grays about the type of credit inquiry it would perform (*id.* at ¶19). Indeed, there is no evidence BlackHawk had any interactions with Grays whatsoever, let alone knowledge of her use of TSG's website or her discussions with Auto Mart employees.

---

client's Privacy Policy. Nor has she alleged or shown how the Privacy Policy is implicated on these facts involving BlackHawk's reselling of her credit reports to Auto Mart and TSG based on the car dealerships' respective permissible purposes for requesting her reports.

Without evidence BlackHawk knew some material fact was being concealed from Grays, there is a corresponding lack of evidence that BlackHawk intended for Grays to act upon anything allegedly concealed from her. Grays is also unable to quantify the impact, if any, the hard credit inquiries had on her considering her undisputed troubled credit history, and thus she cannot establish damages. *See id.* at ¶¶33-35. Grays failed to direct the Court to any evidence appropriate for its consideration that would suggest a genuine dispute for trial over these facts. *See* Fed. R. Civ. P. 56(e). Thus, the Court finds that summary judgment in favor of BlackHawk is appropriate on this claim.

### b. Fraudulent Misrepresentation of Material Facts

BlackHawk is entitled to summary judgment on this claim for similar reasons. "The elements of fraudulent misrepresentation are: a fraudulent misrepresentation of material fact; (2) the plaintiff['s] reliance on the material misrepresentation; (3) the plaintiff['s] right or justification in relying on the misrepresentation; and (4) reliance resulting in damages." *Nielson v. Scott*, 53 P.3d. 777, 779-80 (Colo. App. 2002) (citing *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380 (Colo. 1994)).

As explained above, BlackHawk did not have knowledge of the soft versus hard inquiry language on the TSG website (Facts, ¶22), and only Auto Mart employees made representations to Grays concerning Auto Mart's credit application (*id.* at ¶19). And because the misrepresentations Grays alleges involve alleged promises to perform a future act, she must further provide evidence that BlackHawk had a then-

present intention not to follow through with its alleged promise. *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010) (citing *Nelson v. Gas Rsch. Inst.*, 121 P.3d 340, 343 (Colo. App. 2005)) ("Where the fact allegedly misrepresented is not an existing fact, but rather, a promise to perform a particular act at a future time, the pleader must allege facts showing that, at the time of the promise, the speaker consciously harbored a present intention not to perform the promised act."). Grays, however, fails to do so.

How the car dealerships represented they would process Grays' credit applications—as hard versus soft inquires—were *their* representations of a future act at the time those representations were made. It is undisputed that BlackHawk made no representations to Grays regarding her credit application with Auto Mart. And because Blackhawk was unaware of the "soft inquiry" language on TSG's website, there is an absence of evidence that BlackHawk consciously harbored an intention not to perform as promised on that website. Grays also cannot demonstrate she suffered any damages. Thus, there are not triable issues for a jury to consider on this claim.

### c. Fraudulent Misrepresentations in Advertising

Grays asserts a claim for fraudulent misrepresentation in advertising under Colo. Rev. Stat. § 5-3-110, Colorado's Uniform Consumer Credit Code (the "Code"). BlackHawk is entitled to summary judgment on this claim because it is undisputed that BlackHawk is not a "creditor" under the Code.

20

The Code prohibits a "creditor" from advertising any "false, misleading, or deceptive statement or representation with regard to the rates, terms, or conditions of credit of a consumer credit transaction." Colo. Rev. Stat. § 5-3-110(1). It defines "creditor" to mean "the seller, lessor, lender, or person who makes or arranges a consumer credit transaction and to whom the transaction is initially payable . . . ." Colo. Rev. Stat. § 5-1-301(17). Grays has conceded that BlackHawk did not grant credit to, or arrange credit for, her; nor did she apply for a loan from BlackHawk. Facts, ¶16. There are no triable issues for a jury on this claim as a result, thus entitling BlackHawk to summary judgment.

### d.  The Code More Generally

Like her above claim for fraudulent misrepresentation in advertising under the Code, Grays' claim for a more general violation(s) of the Code fails for the same reason. The Code regulates actions by creditors. But BlackHawk is not, by definition, a creditor under the Code. *See* Colo. Rev. Stat. § 5-1-301(11), (12), & (17). BlackHawk is entitled to summary judgment on this claim as a result.

### e.  Breach of Contract

For her breach of contract claim to succeed, Grays must prove (1) the existence of a contract, (2) performance by her or some justification for nonperformance, (3) failure to perform by BlackHawk, and (4) damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (cited by *City and Cnty. of Denver v. Bd. of Cnty. Commr's of Adams Cnty.*, 543 P.3d 371, 378 (Colo. 2024). A contract "requires mutual

21

assent to an exchange between competent parties for legal consideration." *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022). If there is "no meeting of the minds . . . ," there is no enforceable contract. *Id.*

Grays admits she was not even aware of BlackHawk at the time of her credit applications with Auto Mart and TSG. Facts, ¶29. If she was unaware of BlackHawk at the time, then clearly there was no contract between Grays and BlackHawk. Grays has not come forward with any evidence of a meeting of the minds between her and BlackHawk on any subject for legal consideration. Moreover, as the Court has already discussed, Grays has not produced competent evidence of damages resulting from the alleged breach of contract by BlackHawk. There are no triable issues of material fact on this claim.

### f.  Outrageous Conduct

For this claim, Grays fails to show a disputed issue of material fact over whether BlackHawk's conduct is extreme and outrageous enough for consideration by a jury. This claim requires a showing that "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003) (citation omitted). "[T]he level of outrageousness required to create liability is extremely high." *Id.* "Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a

civilized community, will suffice." *Id.* (citations omitted).

The Court finds the undisputed material facts do not show BlackHawk's actions, even assuming those actions were wrongful, meet the high bar for an outrageous conduct claim. BlackHawk, in its role as a reseller consumer reporting agency, resold Grays' credit report to two auto dealerships that each represented to BlackHawk that they had a permissible purpose to request the report. The fact that hard credit inquiries were made by the auto dealers rather than soft credit inquiries does nothing to raise BlackHawk's actions to the outrageous level. *See Pearson*, 70 P.3d at 597; *compare Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1004 (D. Colo. 2012) (finding defendant's conduct was not extreme and outrageous where it confirmed plaintiff's debt multiple times before foreclosing on his property), *with Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1070-71 (D. Colo. 2009) (on motion to dismiss, finding plaintiff sufficiently pled extreme and outrageous conduct where plaintiff had notified defendant he had paid off loan but defendant still reported the loan as delinquent to credit reporting agencies).

There is likewise an absence of evidence that BlackHawk's conduct was reckless or that it was done with the intent of causing Grays severe emotional distress. The Court therefore grants summary judgment to BlackHawk on this claim.

### g.  Colorado Uniform Commercial Code

Grays cites Colorado Revised Statute § 4-1-304 and § 4-2-515 in the TAC as bases for BlackHawk's liability under the Colorado Uniform Commercial Code (UCC).

23

Dkt. 52, pp.24-25. But it is undisputed that no contract, let alone a contract for the sale of goods, existed between these parties. And further, Blackhawk sold no goods to Grays.

The UCC regulates the sale of goods but not services. Colo. Rev. Stat. § 4-2-102. Even in a hybrid transaction involving goods and services, if the sale of goods does not predominate, then the UCC applies only to the sale-of-goods aspect of the transaction. *Id.* at § 4-2-102(2). But the reselling of a credit report is not the sale of "goods." *Id.* at § 4-2-105(1) (definition of "goods"); *see also Strong v. Retail Credit Co.*, 552 P.2d 1025, 129-30 (Colo. App. 1976) (sale of investigative report about individual was not sale of goods subject to UCC).

Moreover, as explained above, there was no contract—for goods or otherwise—between Grays and BlackHawk. Fact, ¶17. The UCC is inapposite and summary judgment is warranted on this claim.

### h.  Colorado Consumer Protection Act (CCPA)

To prove a private cause of action under the CCPA, a plaintiff must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain*

*Rhino Linings, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003).

The undisputed material facts demonstrate a lack of evidence to support the public impact element of this claim. This matters because "if a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Id.* at 149. In determining whether a challenged business practice significantly impacts the public to sustain a CCPA claim, courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.*

There is no evidence on this record that any consumers, besides Grays, were affected by BlackHawk's alleged conduct, including its coding error that led to the "soft inquiry" reference on the TSG website. Facts, ¶¶27, 28. Because Grays cannot prove the public impact element of this claim, BlackHawk is entitled to summary judgment.

### i. Negligent Misrepresentation in the Terms and Conditions of Plaintiff's Credit Check

The Court liberally construes this claim as raising either or both negligent misrepresentation torts recognized by Colorado—negligent misrepresentation causing physical injury, and negligent misrepresentation causing financial loss in a business transaction. BlackHawk argues it is entitled to summary judgment on this

claim because "[b]oth torts require damages. There are no damages." Dkt. 79, p.17.

The tort of negligent misrepresentation causing physical harm requires a showing that (1) the defendant negligently gave false information to the plaintiff; (2) the plaintiff relied upon such information; and (3) this reliance was a cause of physical harm to the person or property of the plaintiff. CJI-Civ. 9:3 (ed. 2021). The tort of negligent misrepresentation causing financial loss in a business transaction requires a showing that (1) the defendant gave false information to the plaintiff; (2) the defendant gave such information to the plaintiff in the course of its business; (3) the defendant gave the information to the plaintiff for plaintiff's use in a business transaction; (4) the defendant was negligent in obtaining or communicating the information; (5) the defendant gave the information with the intent or knowing that plaintiff would act in reliance on the information; (6) the plaintiff relied on the information supplied by the defendant; and (7) this reliance on the information supplied by the defendant caused damage to the plaintiff. *Id.* at 9:4.

As mentioned above, Grays has not brought forth evidence demonstrating she suffered monetary damages or physical harm from BlackHawk's reselling of her credit reports to Auto Mart and TSG, or its coding error leading to the inaccurate "soft inquiry" reference on TSG's website. Thus, the undisputed material facts show an absence of proof for a required element of Grays' negligent misrepresentation claim.

*     *     *

For the reasons shared above, Defendant's Motion for Summary Judgment, Dkt. 79, is GRANTED. Plaintiff's Motion for Judgment on the Pleadings, Dkt. 70, is DENIED as MOOT. The Court ORDERS the following:

1. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff on all of Plaintiff's remaining claims;

2. The Clerk of Court shall terminate this action.

DATED: June 26, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge

27